533 A.2d 504

Bobbie J. Speer, Appellant *v.* The Philadelphia Housing Authority, Appellee.

Argued September 14, 1987, before Judge CRAIG, and Senior Judges BARBIERI and KALISH, sitting as a panel of three.

*Neil E. Jokelson,* for appellant.

*Terri W. Claybrook,* for appellee.

OPINION BY JUDGE CRAIG, November 13, 1987:

Bobbie J. Speer appeals a decision of the Court of Common Pleas of Philadelphia County in favor of defen-

dant Philadelphia Housing Authority in Speer's action against the authority for alleged breach of contract for terminating Speer's employment.

Speer's suit also named the union as a defendant, claiming that the union had failed to represent her adequately, but the union could not be subjected to service of process. (According to counsel, the union has been dissolved.)

The issue on appeal as framed by the parties is whether the trial court erred in concluding that Speer had not shown by a preponderance of the evidence that her union breached its duty of fair representation to her.

However, the fact that Speer brought this action at law, seeking only damages as relief, and was able to obtain jurisdiction over her employer alone, raises a preliminary issue of what relief is available to a public employee through the courts when the employee is able to assert a claim for damages against only her public employer, based on wrongful discharge.

The trial court found that appellant Speer was employed as a housing security officer by the authority. In that position she was armed and in uniform, and she performed duties similar to those of a patrolling police officer. At all times relevant to this dispute Speer was a member of the Union of Security Officers, Local No. 1.

In March of 1976 Speer injured her right ankle while she was working for the authority, and she was off work for approximately one month. She returned to work in April with a light duty restriction, but in June her doctor placed her right leg in a cast from the ankle to the knee. In late June or early July the authority assigned Speer to sit on a park bench outside a highrise public housing project with her leg elevated. Believing that she would be in danger and defenseless, Speer refused the assignment.

The authority informed Speer by letter dated January 20, 1977, that she was suspended effective January 19, 1977, and that the authority intended to terminate her, effective February 2, 1977, for being absent without leave. That letter also advised Speer that she had certain appeal rights, which were listed in the collective bargaining agreement.

Speer contacted a union official and told him that she wished to resist the authority's actions. The union contacted the authority and arranged a meeting to discuss the matter pursuant to Step Three of the Grievance Procedure of the collective bargaining agreement. At the meeting, on February 4, 1977, were Speer, William A. Gaughan, the authority's personnel director, union representatives, and additional authority employees.

After the meeting, the personnel director sent a letter to Speer dated the same day advising her that as of that day she was officially terminated from the authority. Speer was dissatisfied with the results of the February 4 meeting; however, the union never contacted Speer after the meeting, and the authority never received any notice from the American Arbitration Association that the union had filed for arbitration. Under the terms of the collective bargaining agreement, only the union had the right to file for arbitration.

Speer's employment with the Philadelphia Housing Authority was governed by the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, 43 P.S. §§1101.101-1101.2301 (PERA).[1] The provision relating

---

[1] Section 301 of that act, 43 P.S. §1101.301, defines "public employe" to mean any individual employed by a public employer (with certain exceptions not relevant here), and it defines "public employer" to mean, among other things "the Commonwealth of Pennsylvania, its political subdivisions including school districts and any officer, board, commission, agency, authority, or other instrumentality thereof . . . ."

to mandatory arbitration of disputes under collective bargaining agreements covered by PERA is in section 903, 43 P.S. §1101.903, which provides in part as follows:

> Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory. The procedure to be adopted is a proper subject of bargaining with the proviso that the final step shall provide for a binding decision by an arbitrator or a tri-partite board of arbitrators as the parties may agree.

This case is controlled by *Martino v. Transport Workers' Union of Philadelphia, Local 234*, 505 Pa. 391, 480 A.2d 242 (1984), in which the Pennsylvania Supreme Court considered the question of what relief is available to a discharged public employee through the courts under section 903 of PERA. In *Martino* a public employee who was discharged sought an order compelling his union and his employer to participate in an arbitration proceeding nunc pro tunc. The employer filed preliminary objections, arguing that the court's decision in *Ziccardi v. Commonwealth*, 500 Pa. 326, 456 A.2d 979 (1982), made a suit against the union for damages the exclusive remedy for a discharged employee alleging bad faith failure by the union to pursue a grievance to arbitration. In ruling on the preliminary objections, the court noted that *Ziccardi* had held that generally an employee cannot seek reinstatement directly from a court, even where the employee alleges a bad faith failure of his union to seek arbitration, but that the employer may be joined in the employee's action against the union so that a chancellor may fashion an appropriate equitable remedy permitting arbitration nunc pro tunc. "In short, *Ziccardi* held only that [the employee] had no right to sue on the contract." *Martino*, 500 Pa. at 394 n. 3, 480 A.2d at 244 n. 3.

The court then further explained *Ziccardi* by holding that an employee may seek relief in equity under either state or federal law by joining his employer where the union breaches its duty of fair representation when such joinder is necessary to afford him an adequate remedy.

> However, the union's misconduct should not deprive the employer of all the procedural and substantive benefits of the bargained for grievance procedure, a procedure which PERA mandates. Therefore, we also hold that the employee's relief under PERA is limited to an order from the chancellor compelling arbitration of the underlying grievance.

*Martino,* 500 Pa. at 397, 480 A.2d at 245.

The court also discussed the different development of the federal law in cases arising under the Labor Management Relations Act of 1947, 29 U.S.C. §185 (LMRA), including some cases, such as *Vaca v. Sipes,* 386 U.S. 171 (1967), cited by the appellant here. However, the court then expressly noted that such cases interpreting employees' rights under LMRA, while instructive, "are not authoritative on cases arising under PERA." 500 Pa. at 405, 480 A.2d at 249.

The court emphasized that an action in equity seeking an order to compel arbitration is the employee's sole remedy in the courts to enforce his contract rights against the employer under section 903 of PERA:

> Our holding that the chancellor lacks authority to resolve the underlying grievance is consistent with [1 Pa. C. S. §1504, mandating strict application of remedies provided by statute] and the strong policy favoring arbitration of public sector grievances embodied in Section 903 of PERA. Moreover, our holding that the chancellor may, if the employee establishes the union's breach of

> its duty of fair representation, order arbitration of the underlying grievance *nunc pro tunc* provides the employee with a complete and adequate legal remedy.

*Id.* at 408, 480 A.2d at 251 (footnote omitted).

Thus, under *Martino,* a discharged employee has an action in common pleas court against the union to compel arbitration, and the employer may be joined in order to make that remedy complete. In this action Speer initially named both the employer and the union as defendants, in conformity with that doctrine.

However, instead of seeking an order to compel arbitration, Speer has sought money damages against the employer. Under *Martino* such damages are not available from the court of common pleas without some showing of collusion between the employer and the union that resulted in the union's breach of its duty of fair representation, and no such allegations appear in this case. Moreover, even if the action had been framed to seek the aid of equity in compelling arbitration, the union, although initially named as a defendant, was not served, and therefore never became a party to the case. Hence the trial court could not have granted relief either in the form of money damages from the union or, even pursuant to transfer of the case to the equity side, in the form of an order to the union and the employer to participate in arbitration.

Accordingly, we could affirm the decision of the trial court in favor of the defendant housing authority on the ground that, under *Martino,* the damages remedy sought by Speer is not available against the employer. However, recognizing the unfortunate nature of the absence of the union from the action—as the trial court apparently did—we will review the trial court's decision also considering whether Speer has proved by a preponderance of the evidence that the union breached its du-

ty of fair representation. If confirmed, that conclusion would underscore the view that this action cannot proceed on any basis.

The *Martino* court stated in its conclusion that "we hold today that before a court sitting in equity may entertain a complaint seeking to order arbitration, the complainant must prove that the union *acted in bad faith* toward its member." 505 Pa. at 409, 480 A.2d at 252 (emphasis added). The court had elaborated on the bad faith standard in an earlier footnote:

> Appellee Transportation Workers' Union argues that the Ziccardi rule would encourage unions to take all grievances, including frivolous ones, to arbitration. That argument is, in turn, frivolous. It ignores the fact that under Ziccardi the union *is not responsible for negligence in processing a grievance.* Instead, *the union is only responsible to its members for acts of bad faith with respect to a grievance.* That high standard insulates the union from the exposure where, after a proper exercise of discretion, it declines to process a frivolous and meritless grievance. Moreover, we noted the possibly subliminal concern of both employer and union, expressed in argument, that opening the courts to any action by disgruntled employees will force unions to take all grievances to arbitration in order to avoid expensive lawsuits. We cannot believe that experienced, responsible unions will be: so deficient in judgment that they cannot recognize frivolous cases; so ineffective that they cannot demonstrate to aggrieved members of the unit why there is little chance of success at arbitration; or so lacking in courage that they will not make the hard choices required of all fiduciaries when the separate interests of their beneficiaries

conflict among themselves, as in seniority disputes, or with the interest of the whole, as in dealing with a dangerously incompetent, violent or clearly dishonest worker. Whether this union's judgment in making that hard choice was so woeful as to constitute bad faith will be the threshold question before Common Pleas here.

*Id.* at 407 n. 12, 480 A.2d at 250 n. 12 (emphasis added).

The record in this case indicates that Speer sought help from her union in resisting the authority's announced intention to discharge her. The union arranged for a meeting among Speer, representatives of the union, and representatives of the employer, which meeting conformed to the requirements of Step Three of the grievance procedure in the collective bargaining agreement. The union did not then pursue arbitration of Speer's grievance. That is all that the record shows. Speer introduced no evidence tending to establish fraud, misrepresentation, bad motive or the like on the part of the union. The trial court's conclusion that Speer had not met the high standard of showing bad faith on the part of the union clearly was correct. Therefore, even if the union had been served, Speer would not have been entitled to relief upon the evidence in this record.

Accordingly, we affirm.

### ORDER

NOW, November 13, 1987, the order of the Court of Common Pleas of Philadelphia, at No. 5697 July term, 1979, dated June 10, 1985, is affirmed.