**Police Officer Tony GARZELLA, Police Officer Anthony Cali and Police Officer Jody Sibio**

v.

**BOROUGH OF DUNMORE and Dunmore Police Association.**

**Appeal of: Jody Sibio.**

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 2012.

Decided Jan. 29, 2013.

Cynthia L. Pollick, Pittston, for appellant.

Stephen J. Holroyd, Philadelphia, for appellee Dunmore Police Association.

Greg H. Dadamo, Harrisburg, for appellee Borough of Dunmore.

BEFORE: LEAVITT, Judge, and McCULLOUGH, Judge, and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

This is an appeal from a summary judgment granted by the Court of Common Pleas of Lackawanna County (trial court) in an action brought by Jody Sibio, a former Active Reserve Police Officer of the Borough of Dunmore (Borough), against the Borough and his union, Dunmore Police Association (Union). Sibio and two other Active Reserve Officers who settled their claims prior to this appeal, Anthony Cali and Tony Garzella, brought an action against the Borough for breach of a labor contract (the Act 111 Contract) imposed by an interest arbitration award under Act 111,[1] the statute governing the collective bargaining rights of policemen and firemen, and against the Union for breach of the duty of fair representation. The trial court granted summary judgment on the ground that our Supreme Court's decisions in *Martino v. Transport Workers' Union of Philadelphia, Local 234*, 505 Pa. 391, 480 A.2d 242 (1984), and *Ziccardi v. Commonwealth*, 500 Pa. 326, 456 A.2d 979 (1982), bar a public employee from suing his employer for breach of a labor contract and limit his remedy against his union to *nunc pro tunc* grievance arbitration, absent proof of conspiracy or collusion between the employer and the union or active participation by the employer in the union's breach of its duty of fair representation. Because there is no evidence that the Borough and Union conspired or colluded to deny Sibio's rights under the Act 111 Contract or that the Borough participated in the Union's breach of its duty of fair representation, we affirm.

Sibio was hired as a police officer by the Borough in 1994 and was an Active Reserve Officer. (Deposition of Plaintiff Jody Sibio, R.R. at 724a; Amended Complaint ¶ 3, R.R. at 45a; Borough Answer ¶ 3, R.R. at 106a.) The Collective Bargaining Agreement entered into by the Borough and the Union in 2001 (the 2001 CBA) classified police officers employed by the Borough as Full–Time Officers and Active Reserve Officers and provided that Full–Time Officers received a higher salary and additional benefits not provided to Active Reserve Officers. (2001 CBA, R.R. at 74a–83a.) The 2001 CBA provided that "Full-time Police Officers shall have seniority over active reserve Police Officers." (2001 CBA Article 6, R.R. at 78a.) The 2001 CBA also included a mandatory grievance arbitration procedure. (2001 CBA Article 18, R.R. at 84a.)[2]

---

**1.** Act of June 24, 1968, P.L. 237, No. 111, *as amended*, 43 P.S. §§ 217.1–217.10.

**2.** That grievance article states in relevant part:

Section 1—The purpose of the grievance procedure shall be to settle all grievances between the Police Department and the Union as quickly as possible so as to insure efficiency and promote Police Officer morale. A grievance is any allegation by a Police Officer or group of Police Officers, the Union or the Borough that there has

been a violation of an expressed provision of this agreement.

Section 2—Any grievance by a Police Officer or group of Police Officers or the Union shall first be filed with the Borough Council by giving a copy of the grievance to the Borough Manager and the Borough Council President. Copies of the grievance shall also be furnished to the Police Chief and the Mayor. In the event that the Borough Council fails to respond to a grievance within thirty (30) days of receipt of the grievance, the grievance shall be considered

Over half of the Borough's police officers, including the Union leadership, were Active Reserve Officers. (January 2003 Seniority List, R.R. at 517; Deposition of Union Officer William Springer, R.R. at 582a.) In the negotiations for a new contract after the 2001 CBA, the Union sought Full–Time Officer status for the Active Reserve Officers, including participation in the pension program. (Deposition of Plaintiff Anthony Cali, R.R. at 659a; Deposition of Plaintiff Tony Garzella, R.R. at 681a.) Because civil service status was required for participation in the pension program, whether the Active Reserve Officers would have to take a civil service examination to become Full–Time Officers was an issue in the negotiations. (Cali Dep., R.R. at 625a–626a, 659a; Garzella Dep., R.R. at 679a, 696a.) The Union opposed requiring the Active Reserve Officers to take a civil service examination. (Springer Dep., R.R. at 580a; Cali Dep., R.R. at 658a–659a.)

Contract negotiations were unsuccessful and the Union and Borough submitted the dispute over the new terms and conditions of their collective bargaining agreement to Act 111 arbitration. (Act 111 Contract, R.R. at 62a; Springer Dep., R.R. at 580a; Cali Dep., R.R. at 624a–625a.) In February 2005, the arbitrators issued their award, the Act 111 Contract. (Act 111 Contract, R.R. at 61a–66a.) The Act 111 Contract set new, higher salaries for both Full–Time and Active Reserve Officers and provided for Active Reserve Officers to become Full–Time Officers if they passed a civil service examination. (Act 111 Contract 12(A), (C), R.R. at 62a–63a.) The Act 111 Contract provided:

> sustained, and the remedy requested shall be implemented. In the event the Borough Council denies the grievance in writing, the grievance shall be submitted to binding arbitration pursuant to the rules and regula-

The Panel orders the Borough Civil Service Commission to offer an Examination to all current Active Reserve Officer[s] no later than June 30, 2005. The examination shall be offered to fairly and reasonably ascertain whether the Active Reserve Officers meet the minimum requirements to serve as a Dunmore police officer.

Active Reserve Officers who receive a passing grade in the Civil Service Examination shall thereafter be considered to be Full–Time Police Officers for the purpose of this agreement and shall [be] compensated at the following annual wage rate retroactive to the effective date of they [sic] year each has qualified through the civil service.

(Act 111 Contract ¶ 2(C), R.R. at 63a.) Active Reserve Officers who failed the civil service examination would remain as Active Reserve Officers at a salary that was higher than under the 2001 CBA, but lower than the salary of Full–Time Officers. (Act 111 Contract ¶ 2(C), R.R. at 63a.) The Act 111 Contract did not contain any provisions changing the 2001 CBA's seniority and grievance articles and provided that "all other terms and conditions" of the 2001 CBA "not modified by this Award shall remain 'as is.'" (Act 111 Contract ¶ 11, R.R. at 65a.)

The Borough contracted with the Pennsylvania Chiefs of Police Association and the testing company with which they work for that outside testing company to provide and score a written civil service examination for the Active Reserve Officers. (Affidavit of Pennsylvania Chiefs of Police Association Testing Coordinator Angela Jones, R.R. at 68a–69a; Cali Dep., R.R. at

> tions of the American Arbitration Association within ten (10) days after the denial of the grievance.
> (2001 CBA Article 18, R.R. at 84a.)

637a; Deposition of Borough Manager Loftus, R.R. at 851a–852a, 335a–336a; Deposition of Borough Civil Service Commissioner Ralph Marino, R.R. at 878a, 880a–882a.) The test was given on May 21, 2005 and consisted of four separate sections on the subjects of Math, Reading, Grammar and Writing. (Test Results Report, R.R. at 892a.) The test was scored by the outside testing company, and the Union had no involvement in the selection of the testing company, administration of the test or scoring of the test. (Jones Affidavit, R.R. at 69a; Springer Dep., R.R. at 581a, 593a; Cali Dep., R.R. at 662a; Garzella Dep., R.R. at 700a; Sibio Dep., R.R. at 931a–932a; Marino Dep., R.R. at 879a, 881a.)

The testing company reported the scores as the percentage for each separate section of the test and an overall percentage, and required a 70% score on each section of the test for a passing grade. (Test Results Report, R.R. at 892a.) Ten of the thirteen Active Reserve Officers scored 70% or higher on all sections of the test and were reported by the testing company as having passed. (Test Results Report, R.R. at 892a.) Sibio received an overall score of 76%, but scored only 50% on the Grammar section. (Test Results Report, R.R. at 892a.) Cali and Garzella received overall scores above 70%, but scored 40% and 60%, respectively, on the Math section. (Test Results Report, R.R. at 892a.) The testing company reported these three Active Reserve Officers as having failed the test. (Test Results Report, R.R. at 892a.) On May 31, 2005, counsel for the Borough's Civil Service Commission sent letters to Cali, Garzella and Sibio notifying them of their scores and that they had failed the civil service examination. (May 31, 2005 Letters to Garzella and Cali, R.R. at 889a–890a; Sibio Dep., R.R. at 727a–728a.)

Sibio, Cali and Garzella asked the Union about challenging the grading of their tests as "Fail," and, on June 23, 2005, jointly filed a grievance with the Union. (June 23, 2005 Grievance, R.R. at 355a–356a; Springer Dep., R.R. at 585a; Sibio Dep., R.R. at 930a, 932a.) On June 14, 2005, prior to receiving the written grievance, the Union membership discussed whether to file a grievance challenging their test grades and voted 15–3 against filing a grievance. (Springer Dep., R.R. at 585a, 594a–596a; Cali Dep., R.R. at 662a–663a; Garzella Dep., R.R. at 698a; Sibio Dep., R.R. at 934a; Minutes of June 14, 2005 Union Meeting, R.R. at 907a–916a.) There was concern among Union members that if a grievance were successful, it could result in voiding the test results and requiring a new test for all the Active Reserve Officers, including the 10 who had already passed. (Springer Dep., R.R. at 585a–586a, 594a–595a; Union Meeting Minutes, R.R. at 907a–908a, 911a.) There was also evidence that the ten Active Reserve Officers who had passed the test stood to advance in seniority at the expense of Cali, Garzella and Sibio if the test results stood; all ten, including both Union officers, had been below Cali in seniority, and six, including one of the Union officers, had been below Sibio in seniority. (January 2003 Seniority List, R.R. at 517a; Cali Dep., R.R. at 664a; Garzella Dep., R.R. at 709a; Sibio Dep., R.R. at 936a; Union Meeting Minutes, R.R. at 909a.) In addition, there was evidence of personal animosity between Cali and the Union officers. (Cali Dep., R.R. at 674a; Sibio Dep., R.R. at 933a–934a; Union Meeting Minutes, R.R. at 908a, 910a–912a; May 24, 2005 Email from Union Officers to Cali, R.R. at 925a.)

The Union did not file a grievance on Sibio's, Cali's and Garzella's behalf, but did indicate that it would try to get them an opportunity to take another test. (Spring-

er Dep., R.R. at 586a; Cali Dep., R.R. at 663a; Garzella Dep., R.R. at 699a, 708a–709a; Sibio Dep., R.R. at 729a–730a; June 29, 2005 Memorandum from Union Officers, R.R. at 897a.) Sibio, Cali and Garzella did not file any grievance with the Borough on their own behalf. (Cali Dep., R.R. at 645a; Garzella Dep., R.R. at 693a, 701a, 712a; Sibio Dep., R.R. at 729a.) On July 1, 2005, Sibio resigned from the police force. (Sibio Dep., R.R. at 721a; Sibio Letter of Resignation, R.R. at 938a.) Cali and Garzella remained on the Borough police force as Active Reserve Officers. (Cali Dep., R.R. at 641a; Garzella Dep., R.R. at 692a; Sibio Dep., R.R. at 748a–749a.)

On August 11, 2005, Cali and Garzella filed suits in federal court against the Borough, various Borough officials, and the Union. (Garzella Federal Complaint, R.R. 116a–126a; Cali Federal Complaint, R.R. 128a–138a.) Sibio, in May 2006, filed a similar federal suit against the same defendants. (Sibio Federal Complaint, R.R. 140a–148a; Sibio District Court Opinion, R.R. at 185a.) In these federal actions, Sibio, Cali and Garzella asserted federal constitutional claims against all the defendants, including the Borough and the Union, and state law claims against the Borough for breach of a collective bargaining agreement provision and against the Union for breach of the duty of fair representation. (Garzella Federal Complaint, R.R. 120a–126a; Cali Federal Complaint, R.R. 132a–138a; Sibio Federal Complaint, R.R. 143a–148a.) In April 2007, the United States District Court for the Middle District of Pennsylvania granted summary judgment against all federal claims in these actions, concluding that the Union could not be liable on the constitutional claims because there was no evidence that it acted at the behest of the Borough, and that there was no due process violation because the plaintiffs did not avail them-

selves of their right to file a grievance with the Borough under the 2001 CBA. (Garzella District Court Opinion, R.R. at 155a–164a; Cali District Court Opinion, R.R. at 172a–180a; Sibio District Court Opinion, R.R. at 188a–191a.) The district court declined to exercise jurisdiction over the state law claims and dismissed those claims without prejudice. (Garzella District Court Opinion, R.R. at 163a–164a; Cali District Court Opinion, R.R. at 179a–180a; Sibio District Court Opinion, R.R. at 189a–191a.) Sibio, Cali and Garzella appealed, and on May 21, 2008, after this action was filed, the United States Court of Appeals for the Third Circuit affirmed the district court's judgments in all three federal actions. (Court of Appeals Opinion, R.R. at 193a–200a.)

On May 3, 2007, while the appeal from the dismissal of their federal actions was pending, Sibio, Cali and Garzella brought this action against the Borough and the Union. (Docket Entries at 1.) In their claim against the Borough, Sibio and his co-plaintiffs alleged that they were improperly scored as having failed the civil service examination and that the Borough's failure to make them Full–Time Officers when they had achieved what they contend were passing grades breached its obligations under the Act 111 Contract. (Amended Complaint, R.R. at 45a–48a.) Sibio and his co-plaintiffs alleged that the Union breached its duty of fair representation by failing to pursue the grievance that they had filed with the Union challenging the scoring of the civil service examination and the Borough's failure to promote them to Full–Time Officers. (Amended Complaint, R.R. at 48a–52a.)

The Borough and the Union filed preliminary objections on a number of grounds, including demurrers that the plaintiffs were barred from suing the Borough for breach of the Act 111 Contract

and were limited in remedy to *nunc pro tunc* arbitration of their grievance. (Borough Preliminary Objections at 2 ¶ 4; Union Preliminary Objections at 3–4 ¶¶ 15–19.) On September 30, 2009, the trial court denied these demurrers on the ground that the Amended Complaint made factual allegations of conspiracy between the Borough and the Union which it was required to accept as true at the pleading stage. (September 30, 2009 Trial Court Memorandum and Order at 5, 10–12.)

In August 2010, following the completion of discovery, the Borough and the Union moved for summary judgment. (Docket Entries at 3.) On November 1, 2010, a different judge of the trial court entered the Order at issue in this appeal granting the Borough's motion for summary judgment, granting the Union summary judgment on the plaintiffs' claims for damages, and limiting the plaintiffs' remedy against the Union to *nunc pro tunc* grievance arbitration on the ground that there was no evidence of collusion or conspiracy between the Borough and the Union. (November 1, 2010 Trial Court Opinion and Order, Opinion at 10–12, Order at 2–3 ¶¶ 4, 4a, 4b.) The trial court, however, denied the Union's motion for summary judgment on the claim it had breached its duty of fair representation, on the ground that there was sufficient evidence to permit a finding of bad faith by the Union, and ordered that the Borough remain in the case as an indispensable party for arbitration of the grievance if the plaintiffs prevailed in their claim against the Union. (November 1, 2010 Trial Court Opinion and Order, Opinion at 7–9, Order at 2 ¶¶ 3, 4a.)

Plaintiffs Cali and Garzella entered into settlements with the Borough and Union prior to trial of the claim against the Un-

ion, and discontinuances of their claims were filed. (Docket Entries at 6.) A jury trial of Sibio's claim against the Union was held from June 6 to June 8, 2011. On June 8, 2011, the jury returned a verdict in favor of Sibio, finding that the Union breached its duty of fair representation to Sibio by refusing to take his grievance to arbitration. (Jury Verdict Interrogatories, R.R. at 1250a.) Sibio timely filed a Motion for Post–Trial Relief seeking reversal of the November 1, 2010 Order and seeking a jury trial of his breach of contract claim against the Borough and his damages claims against the Union. In that motion, Sibio did not submit any factual material or new evidence. (Sibio Motion for Post–Trial Relief and Supporting Brief.) The Union did not file any post-trial motion challenging the jury verdict that it had breached its duty of fair representation.

On December 22, 2011, the trial court entered an Order denying Sibio's Motion for Post–Trial Relief and entering final judgment in favor of Sibio and against the Union on Sibio's duty of fair representation claim, ordering that Sibio is entitled to arbitration *nunc pro tunc*, and, if successful in that arbitration, backpay. (December 22, 2011 Trial Court Order at 4 ¶¶ 15–17.) On January 11, 2012, Sibio filed the instant appeal.[3] The Union did not file any cross-appeal from the judgment against it.

The order of the trial court challenged by Sibio in this appeal is the November 1, 2010 Order granting summary judgment in favor of the Borough and partial summary judgment in favor of the Union limiting Sibio's remedy against the Union. Our standard of review is therefore *de novo* and the scope of review is plenary. *Pyer-*

3. Sibio appealed to the Superior Court, which transferred the appeal to this Court on the

ground that appellate jurisdiction lies in this Court under 42 Pa.C.S. § 762(a)(4)(i).

*itz v. Commonwealth,* 613 Pa. 80, 88–89, 32 A.3d 687, 692 (2011).

The law applicable to this case is clear. It is well established under both our Supreme Court's *Martino* and *Ziccardi* decisions and the decisions of this Court that an aggrieved public employee *cannot* sue his employer for breach of a labor contract governed by state collective bargaining laws, even where his union has in bad faith refused to bring his grievance to arbitration, unless he shows, by specific facts, that the employer actively participated in the union's bad faith or that the employer conspired or colluded with the union to deny the employee his rights under the labor contract. *Martino,* 505 Pa. at 394, 397, 406–08, 480 A.2d at 244–45, 250–51; *Ziccardi,* 500 Pa. at 332, 456 A.2d at 981–82; *Runski v. American Federation of State, County and Municipal Employees, Local 2500,* 142 Pa.Cmwlth. 662, 598 A.2d 347, 350 (1991), *aff'd without op.,* 537 Pa. 193, 642 A.2d 466 (1994); *Reisinger v. Department of Corrections,* 130 Pa. Cmwlth. 585, 568 A.2d 1357, 1360 (1990); *Speer v. Philadelphia Housing Authority,* 111 Pa.Cmwlth. 91, 533 A.2d 504, 505–06 (1987). This rule applies fully to claims for breach of interest arbitration awards, such as the Act 111 Contract. *Reisinger,* 568 A.2d at 1358, 1360 (barring claims against employer for breach of contract arrived at by interest arbitration award).

Absent a showing of active participation by the employer in the union's bad faith, or conspiracy or collusion between the employer and the union, the merits of the employee's claim for breach of the labor contract must be determined by arbitration, and not by a court; indeed, the court "lacks authority to resolve the underlying grievance." *Martino,* 505 Pa. at 408, 480 A.2d at 251; *Speer,* 533 A.2d at 506 (quoting *Martino* ). The employee may obtain relief against the employer for violation of the labor contract, but only through arbitration of a grievance under the contract's grievance procedures. *Martino,* 505 Pa. at 407–10, 480 A.2d at 250–52; *Speer,* 533 A.2d at 506.

While a public employee may sue his union for breach of its duty of fair representation, unless the employee proves active participation by the employer in the union's bad faith, or conspiracy or collusion between the employer and union, the employee's only remedy against the union is an order for *nunc pro tunc* arbitration of his grievance. *Martino,* 505 Pa. at 408–10, 480 A.2d at 251–52; *Runski,* 598 A.2d at 350; *Reisinger,* 568 A.2d at 1360. Absent a showing of active participation, conspiracy or collusion by the employer, the court may determine whether the union breached its duty of fair representation and "order the completion of the arbitration procedure," but "in cases governed by state labor law its power is limited to that remedy." *Martino,* 505 Pa. at 409–10, 480 A.2d at 252.

Thus, the issue in this appeal is not whether Sibio had a passing or failing score on the civil service test or whether he was entitled to be made a Full–Time Officer under the Act 111 Contract. Rather, the issue is whether Sibio showed by specific facts that the Borough actively participated in the Union's refusal to file his grievance or that the Borough and Union colluded or conspired with respect to the scoring of the test or the Union's refusal to file the grievance.

The trial court correctly held that Sibio did not meet this burden. Conclusory allegations of conspiracy are not sufficient to permit an action for damages for a public employer's breach of a labor contract. *Runski,* 598 A.2d at 351. Evidence that the employer and union took the same position in responding to a re-

quest is also insufficient, without more, to satisfy the employee's burden to show active participation, conspiracy or collusion. *Runski,* 598 A.2d at 351 (dismissing action where employee's only evidence of collusion was that both union and employer had refused his requests for copy of collective bargaining agreement).

There is no evidence in this record of any collusion or conspiracy between the Borough and the Union or of any participation whatsoever by the Borough in the Union's decision not to file a grievance. The evidence was undisputed that the Union had no involvement in the scoring of the test. (Jones Affidavit, R.R. at 69a; Springer Dep., R.R. at 581a, 593a; Cali Dep., R.R. at 662a, 673a; Garzella Dep., R.R. at 700a; Sibio Dep., R.R. at 931a–932a; Marino Dep., R.R. at 879a, 881a.) Sibio himself admitted:

Q. Do you have any evidence that the DPA [Dunmore Police Association] was involved in the selection of the testing company?

A. Not to my knowledge.

Q. Do you have any evidence that the DPA was involved in the selection of the type of test to be given?

A. Not to my knowledge.

Q. Do you have any evidence that the DPA was involved in the administering of the test, the actual giving of the test?

A. No.

Q. Do you have any evidence that the DPA was involved in the decision to score using elements instead of using what is being called the flat 70?

A. No.

MS. POLLICK: Objection, assumes facts not into evidence.

BY MR. HOLROYD:

Q. Do you have any evidence the DPA was involved in the actual scoring of the test?

A. No.

(Sibio Dep., R.R. at 932a.) The only evidence to which Sibio points concerning the scoring of the test (Appellant's Brief at 15) consists of conduct of Borough representatives and the desire of the Borough to limit the number of Full–Time Officers and shows no Union involvement, communication or collusion of any kind.

There was likewise no evidence that the Borough participated in any way in the Union's decision not to file a grievance. (Cali Dep., R.R. at 664a, 670a; Sibio Dep., R.R. at 934a.) The Union's decision was made at a Union meeting based on a vote of the Union membership. (Springer Dep., R.R. at 585a, 594a–596a; Cali Dep., R.R. at 662a–663a; Garzella Dep., R.R. at 698a; Sibio Dep., R.R. at 934a; Minutes of June 14, 2005 Union Meeting, R.R. at 907a–916a.) There was no evidence that any Borough representative attended this meeting or urged or suggested to any Union representative that the grievance should not be pursued. The evidence submitted by Sibio on this issue showed only that the Borough at some unidentified time became aware of the grievance and of the Union's decision not to file it. (Deposition of Councilman Timothy Burke, R.R. at 566a; Deposition of Councilman Leonard Verrastro, R.R. at 755a.) Moreover, the motives for the Union's decision that were suggested by the evidence (risk to the ten officers who had passed the test of having to retake it, seniority and personal animosity of Union officials) were issues internal to the Union that do not create any inference of Borough involvement. Indeed, Sibio admitted:

Q. Do you have any evidence that the Borough was involved in the DPA's decision regarding the handling of the grievance?

A. No.

MS. POLLICK: Objection, confusing question.

THE WITNESS: Not to my knowledge.

BY MR. HOLROYD:

Q. Do you understand the question?

A. I think so.

Q. Do you have any evidence that the Borough was involved in the DPA's decisions regarding the handling of the grievance?

MS. POLLICK: Same objection.

THE WITNESS: Not to my knowledge.

BY MR. HOLROYD:

Q. Do you have any evidence that any councilmen [sic] was involved in the DPA's decision regarding the handling of the grievance?

A. Not to my knowledge.

(Sibio Dep., R.R. at 934a.)

Sibio contends that the Borough's failure to object to the Union's post-test seniority list shows collusion with the Union, claiming that by this failure to object, the Borough allegedly "agreed" with the Union "to strip seniority" from him. (Appellant's Brief at 15–16; Appellant's Borough Reply Brief at 1–2; Appellant's Union Reply Brief at 2.) That argument does not satisfy Sibio's burden to show active participation by the Borough in the Union's handling of the grievance or conspiracy or collusion to deny rights under the Act 111 Contract. In August 2005, after Sibio resigned from the police department, the Union submitted a new seniority list to the Borough placing the officers who had been scored as passing the test above Cali and Garzella, who remained Active Reserve Officers. (August 3, 2005 Union Letter to Borough Manager Loftus and Seniority List, R.R. at 518–519.) In submitting this new seniority list, the Union stated:

> In the wake of the Jody Sibio resignation and completion of civil service process, the association members have asked for the opportunity to re-bid shifts. Because there is going to be a re-bidding and re-organization of the police department seniority list based on article six of the CBA, we are submitting the new list in accordance with the CBA. (Attached) If the borough does not respond within ten days we will be consider [sic] to have been deemed approved and we will commence re-bidding.

(August 3, 2005 Union Letter to Borough Manager Loftus, R.R. at 518.) While the Borough did not object to the new seniority list (Springer Dep., R.R. at 614a), that failure to object cannot support any inference of motive on the part of the Borough or collusion or conspiracy. The Act 111 Contract retained the seniority provision of the 2001 CBA, and that provision, Article 6 of the 2001 CBA, expressly required that "Full-time Police Officers shall have seniority over active reserve Police Officers." (Act 111 Contract ¶ 11, R.R. at 65a; 2001 CBA Article 6, R.R. at 78a.) The Borough therefore had no basis for objecting to the new seniority list lowering Cali's and Garzella's seniority, and no inference can be made that the Borough sought to strip any particular officer of seniority. Moreover, to the extent that this may be characterized as an "agreement" between the Borough and the Union, it is not an agreement with respect to the Union's decision not to file the grievance and cannot possibly be characterized as denying Sibio any rights under the Act 111 Contract, as he had resigned over one month earlier and was not affected by the seniority list.

Sibio argues that even if he did not show active participation, conspiracy or collusion, the trial court was barred from granting summary judgment because another judge had previously denied preliminary objections on the same issue. (Appellant's Brief at 12.) That contention is

without merit. The rule that one judge should not overrule another on the same court, the coordinate jurisdiction rule, does *not* apply where the motions are of a different type, and does *not* bar a judge on summary judgment from overruling another judge's decision on preliminary objections or judgment on the pleadings, even on an identical legal issue. *Riccio v. American Republic Insurance Co.,* 550 Pa. 254, 260–62, 705 A.2d 422, 425–26 (1997); *Goldey v. Trustees of University of Pennsylvania,* 544 Pa. 150, 155–56, 675 A.2d 264, 267 (1996); *Teamann v. Zafris,* 811 A.2d 52, 63–64 (Pa.Cmwlth.2002), *abrogated on other issue, McCreesh v. City of Philadelphia,* 585 Pa. 211, 888 A.2d 664 (2005); *Mellon Bank, N.A. v. National Union Insurance Co. of Pittsburgh,* 768 A.2d 865, 870–71 (Pa.Super.2001); *D'Errico v. DeFazio,* 763 A.2d 424, 435–36 (Pa.Super.2000). "Where the motions differ in kind, as preliminary objections differ from motions for judgment on the pleadings, which differ from motions for summary judgment, a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion." *Riccio,* 550 Pa. at 261, 705 A.2d at 425 (quoting *Goldey* ).

■ Indeed, the trial court's summary judgment was not an overruling of the prior denial of preliminary objections or inconsistent with that ruling, but was a result of the different procedural posture of the case and different evidence before the court. The denial of preliminary objections was based on the fact that the trial court was required at that stage of the case to accept the allegations of Sibio's Amended Complaint as true. (September 30, 2009 Trial Court Memorandum and Order at 5, 10–12.) In contrast, the "mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for a trial." *Ertel v. Patriot–News Co.,* 544 Pa. 93, 100, 674 A.2d 1038, 1042 (1996) (quoting *Curran v. Philadelphia Newspapers, Inc.,* 497 Pa. 163, 439 A.2d 652 (1981)); *Riverwatch Condominium Owners Association v. Restoration Development Corp.,* 980 A.2d 674, 682 n. 14 (Pa.Cmwlth.2009) (quoting *Ertel* ); *see also* Pa. R.C.P. No 1035.2(2) (summary judgment may be granted where "after the completion of discovery relevant to the motion, ... an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action").

Sibio also argues that even if he did not show active participation, conspiracy or collusion, the trial court should not have limited his remedy against the Union to *nunc pro tunc* arbitration because that remedy is allegedly inadequate. (Appellant's Brief at 18–20; Appellant's Union Reply Brief at 3–4.) This argument is contrary to settled Pennsylvania law. As discussed above, Pennsylvania law is clear that absent proof of active participation, conspiracy or collusion by the employer in the union's bad faith, a public employee's remedy in court against his union is limited to compelling arbitration of the grievance. *Martino,* 505 Pa. at 408–10, 480 A.2d at 251–52; *Runski,* 598 A.2d at 350; *Reisinger,* 568 A.2d at 1360. In *Martino,* the Court specifically held that "arbitration of the underlying grievance *nunc pro tunc* provides the employee with a complete and adequate legal remedy" in the precise situation where the union has been found to have acted in bad faith toward the employee. 505 Pa. at 408, 480 A.2d at 251.

■ This does not immunize the Union from the consequences of its bad faith or fail to compensate for the years of delay. Both the trial court's summary judgment and its final judgment provide that Sibio, if successful in his arbitration, is entitled to

backpay. (November 1, 2010 Trial Court Order at 3 ¶ 4b; December 22, 2011 Trial Court Order at 4 ¶ 17.) Under *Martino,* if the employee obtains an award of backpay in the *nunc pro tunc* arbitration, the union is liable for all of the backpay award for the period of delay after the date that arbitration would have commenced absent the Union's bad faith. *Martino,* 505 Pa. at 404, 409–10, 480 A.2d at 248–49, 251–52.

The sole authority on which Sibio bases his argument that relief beyond arbitration may be awarded against the Union is the United States Supreme Court's federal labor law decision in *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). (Appellant's Brief at 18–20; Appellant's Union Reply Brief at 3–4.) *Vaca,* however, has no applicability to this state labor law case. Our Supreme Court in *Martino* expressly *rejected Vaca* with respect to public employee labor contract disputes and held that *Vaca* does *not* apply to cases governed by Pennsylvania law. 505 Pa. at 401–03 & n. 10, 408–10 & n. 15, 480 A.2d at 247–48 & n. 10, 251–52 & n.15.

For the all of the above reasons, we affirm the trial court's order of November 1, 2010 in this action.

### *ORDER*

AND NOW, this 29th day of January, 2013, the order of November 1, 2010 of the Court of Common Pleas of Lackawanna County in the above-captioned case is AFFIRMED.