NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3220
_____

KATHLEEN LOPRESTI,
                                        Appellant

v.

COUNTY OF LEHIGH; AFSCME, DISTRICT COUNCIL 88, LOCAL 543
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-12-cv-02832)
District Judge:  Honorable Juan R. Sanchez
_____

Submitted Under Third Circuit LAR 34.1(a)
June 2, 2014

Before:  HARDIMAN, SCIRICA, and ROTH, *Circuit Judges*.

(Filed: July 10, 2014)
_____

OPINION
_____

HARDIMAN, *Circuit Judge*.

　　Kathleen Lopresti appeals the District Court's summary judgment in favor of her

former employer, Lehigh County, and her former employee union, the American

Federation of State, County and Municipal Employees, District Council 88, Local 543

(AFSCME). We will affirm.

Because we write primarily for the parties, who are familiar with the case, we recount only the facts and procedural history essential to our decision.

Lopresti worked as a Lehigh County corrections officer from 2002 until September 2011, when she was fired in the wake of an incident that occurred at the Lehigh County Prison on August 18, 2011. Specifically, Lopresti was accused of insulting and aggressively approaching an inmate. According to the County, her termination was the culmination of "a repeated history of volatile, disrespectful behavior toward both staff and inmates" during her time as an officer. A49.

Following Lopresti's termination, AFSCME filed a grievance on her behalf and proceeded toward arbitration, with a hearing scheduled for January 19, 2012. Lopresti also filed for unemployment benefits; on November 23, 2011, her claim was denied, and she was informed that she had until December 6, 2011 to appeal that denial. The County subsequently proposed a settlement, agreeing not to contest Lopresti's receipt of unemployment benefits in exchange for a waiver of rights, including AFSCME's withdrawal of the grievance, and offering to provide a neutral employment reference.

On January 5, 2012, Lopresti left a voicemail for Walter Francis, AFSCME's local staff representative, informing him she would accept the settlement offer. Francis relayed this to the County the next day. The County was unable to fulfill its end of the bargain, though, after Lopresti's attorney disclosed that he had failed to appeal the denial of Lopresti's unemployment benefits by the December 6 deadline. With the deal scuttled,

Lopresti told Francis that she wanted to move forward with the arbitration, so Francis began reviewing relevant materials for the hearing. However, on January 18, 2012, Francis notified Lopresti that he would be withdrawing the grievance because it lacked merit. AFSCME officially withdrew the grievance the next day.

On May 23, 2012, Lopresti sued AFSCME for breach of the duty of fair representation, and she sued the County for breach of contract. Lopresti also sued both defendants for age discrimination, in violation of federal law. On September 19, 2012, Lopresti sought—and the next day received—a voluntary dismissal of the age discrimination claims. In motions filed in October 2013, AFSCME and the County sought summary judgment on the remaining claims. The District Court granted summary judgment to the Union and County on June 6, 2013. This timely appeal followed.[1]

## II

On appeal, Lopresti argues that the District Court lacked jurisdiction to adjudicate the state-law breach of duty of fair representation and breach of contract claims. She also contends that summary judgment was improper. These arguments are unavailing.

## A

In its summary judgment opinion, the District Court stated that it retained

---

[1] We have jurisdiction under 28 U.S.C. § 1291.

supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.[2]

Section 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction" over state-law claims if the court "has dismissed all claims over which it has original jurisdiction." However, a district court may decide state-law claims remaining after the dismissal of federal claims if "considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Bright v. Westmoreland County*, 443 F.3d 276, 286 (3d Cir. 2006) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

By the time Lopresti sought and received dismissal of her federal age discrimination claims, a magistrate judge had held a settlement conference, discovery was underway, and the deadline for filing dispositive motions was less than a month away. Moreover, Lopresti did not seek remand of the state claims until even later, after discovery was complete and summary judgment motions had been filed. In this procedural posture, the District Court was well within its discretion to exercise supplemental jurisdiction over Lopresti's state-law claims, for the reasons articulated in its opinion.

## B

Lopresti also argues that summary judgment was inappropriate because genuine

---

[2] Because Lehigh County is a "political subdivision" of a state and thus does not qualify as an "employer" under the federal Labor Management Relations Act, these claims are governed by state law. *See Felice v. Sever*, 985 F.2d 1221, 1226–27 (3d Cir. 1993); *Manfredi v. Hazleton City Auth.*, 793 F.2d 101 (3d Cir. 1986).

4

issues of material fact exist, and because the District Court misapplied the law and failed to view the facts in the light most favorable to her. The record shows otherwise.

The District Court granted summary judgment on two state-law claims: breach of the duty of fair representation and breach of contract. We consider them in turn, exercising plenary review and applying the same standard as the District Court. *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 580–81 (3d Cir. 2009).[3]

A union has a duty to fairly represent all of its members, both in collective bargaining with an employer and in its enforcement of the resulting collective bargaining agreement. *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). A breach of this duty occurs "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* at 190; *see also Dorfman v. Pa. Soc. Serv. Union, Local 668 of the SEIU*, 752 A.2d 933, 936 (Pa. Commw. Ct. 2000). Under Pennsylvania law, a public employee must meet a high bar to establish this breach of duty. *Martino v. Transport Workers' Union of Philadelphia, Local 234*, 480 A.2d 242, 250 n.12 (Pa. 1984). A "union is not responsible for negligence in processing a grievance"; rather, it is "only responsible to its members for acts of bad faith with respects to a grievance." *Id.* This "insulates the union from exposure where, after a proper exercise of discretion, it declines to process a frivolous and meritless grievance" and is intended to shield unions from having "to take all grievances to arbitration to avoid expensive lawsuits" from

---

[3] Summary judgment is appropriate only if there is no genuine dispute as to any material fact, viewing the record in the light most favorable to the nonmovant. *American Eagle Outfitters*, 584 F.3d at 581.

disgruntled employees. *Id*. *See also Vaca*, 386 U.S. at 191 (holding that an employee does not have "an absolute right to have his grievance taken to arbitration"); *Ziccardi v. Commonwealth*, 456 A.2d 979, 981 (Pa. 1982) (holding that a union has "broad discretion in determining whether to pursue" a grievance).

Here, Lopresti contends that AFSCME's "perfunctory processing" of her grievance and subsequent decision to withdraw it constitutes bad faith. Lopresti Br. at 23. In our view, the record does not contain facts sufficient to survive summary judgment.

Lopresti argues that Francis and the County colluded against her in a "secret deal," but the evidence she cites as proof—most notably, Francis's delay in relaying the County's settlement offer to her and his recommendation that she accept it before he had examined her personnel file or watched a video of the incident—indicates nothing of the sort. Moreover, the record flatly contradicts Lopresti's claim that Francis did not watch the video of the incident in question until *after* he withdrew the grievance; indeed, Lopresti stated at her deposition that Francis discussed the content of the video with her when he called to tell her he was withdrawing the grievance. And the fact that the Union opted to forego the arbitration after having already paid for it does not indicate anything untoward, contrary to Lopresti's claim that it is evidence of personal animus. In addition, while the record contains some evidence that Francis did not "perform his due diligence," as the District Court put it, in examining the background and facts surrounding Lopresti's grievance, such conduct does not rise to the level of bad faith. *See Martino*, 480 A.2d at 250 n.12.

6

Lopresti also argues that AFSCME's withdrawal of her grievance was discriminatory. Specifically, she alleges that the Union failed to pursue arbitration hearings for female corrections officers while doing so for male officers.

In an affidavit filed with her summary judgment response, Lopresti listed five terminated female corrections officers who did not receive a grievance hearing, and seven male officers who did receive hearings. However, this information is inadmissible hearsay. Lopresti simply listed the officers' names and descriptions of their grievances in her own affidavit without any foundation, attribution or indication of how she had or could have personal knowledge of other officers' disciplinary records and how the Union handled them. In her brief, Lopresti calls it "inexplicable" that the District Court did not credit this affidavit, because "much of the information was known to her because of her long tenure with the county." Lopresti Br. at 25. But that description fails to explain why the evidence is admissible; Lopresti's "long tenure" does not automatically bestow personal knowledge upon her, and without more Lopresti could not testify to such unsupported claims at trial for the truth of the matter asserted.

The record does contain some evidence that supports Lopresti's claim: a sworn statement from former officer Phyllis Hamm, one of the female officers named on Lopresti's list, explaining her own case and alleging that the Union would file grievances for men and not women. In addition, Francis testified that two of the male officers on Lopresti's list did proceed to arbitration. However, as potentially troubling as Lopresti's allegations about the treatment of female officers may be, this is not enough to raise a

7

triable issue of fact. Like Lopresti's affidavit, Hamm's statement presents a hearsay problem, and the record lacks detail regarding the alleged disparate treatment of men and women—the kind of comparator evidence a jury would need to be able to find for Lopresti. On this record, reasonable jurors could not conclude that the Union discriminated when it decided to withdraw Lopresti's grievance. Accordingly, the District Court's summary judgment on this claim was proper. *See, e.g.*, *Speer v. Philadelphia Housing Auth.*, 533 A.2d 504, 507 (Pa. Commw. Ct. 1987) (employee who "introduced no evidence tending to establish fraud, misrepresentation, bad motive or the like on the part of the union" would not have been entitled to relief on her breach of duty of fair representation claim).

Lopresti's breach of contract claim against Lehigh County also fails. In Pennsylvania, "an aggrieved public employee *cannot* sue his employer for breach of a labor contract governed by state collective bargaining laws . . . unless he shows, by specific facts, that the employer actively participated in the union's bad faith or that the employer conspired or colluded with the union to deny the employee his rights under the labor contract." *Garzella v. Borough of Dunmore*, 62 A.3d 486, 494 (Pa. Commw. Ct. 2013) (citing *Ziccardi*, 456 A.2d at 981–82); *see also Runski v. AFSCME, Local 2500*, 598 A.2d 347, 350 (Pa. Commw. Ct. 1991), *aff'd without op.*, 642 A.2d 466 (Pa. 1994). Though Lopresti alleges that the Union and County conspired to deprive her of her arbitration hearing, there is no evidence on which a jury could find for Lopresti on this claim, let alone specific facts implicating the County. Lopresti's supposition that the

County and the Union were conspiring against her because Francis "spoke with [the County's representative] more than he spoke to me [about] my case" and recommended she accept the settlement is insufficient. A369–71. Lopresti conceded that she had not even heard a *rumor* of a "working agreement" between the Union and the County. A370**.** Therefore, summary judgment was also proper on this claim.

\* \* \*

For the reasons stated, we will affirm the judgment of the District Court.