Kelly *v.* Montour Railroad Company et al., Appellants.

588

Argued April 10, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Jack W. Plowman,* with him *Rose, Houston, Cooper & Schmidt,* for railroad, appellant.

*Thomas Lewis Jones,* with him *Richard C. Witt,* for insurance company, appellant.

*Samuel J. Goldstein,* for appellee.

OPINION BY WATKINS, J., June 15, 1961:

These appeals are from an order of the Court of Common Pleas of Allegheny County by the Montour Railroad Company and the Equitable Life Assurance Society of the United States, the appellants, directing the reinstatement of a policy of insurance on the life of Eugene V. Kelly, the appellee.

The appeals grew out of an action in equity to reinstate a policy of group life insurance brought by

Kelly, an employee of Montour Railroad Company against the railroad and insurance company. When the case came to trial both sides agreed to submit the case on briefs. The chancellor directed the reinstatement of the policy and the court en banc on exceptions to his findings and conclusions dismissed them and sustained the order.

The facts are as follows: Kelly was employed as a trainmaster by the appellant railroad. On March 5, 1942 he was issued an individual certificate of life insurance under a group contract which the railroad had with the appellant insurance company, in the amount of $5000. The group policy contained, inter alia, a section entitled "Individual Termination" which said:

"The insurance hereunder of any employee shall cease automatically upon the occurrence of any of the following events: (1) The termination of this policy, (2) The cessation of premium payments on account of such employee's insurance hereunder, (3) The termination of his employment in the classes of employees insured hereunder. Cessation of active work by an employee shall be deemed to constitute the termination of his employment except that under the circumstances stated below the Employer may, for the purposes of the insurance hereunder and by filing written notice with the Society, regard employees as still in the employment of the Employer for the respective periods stated: (a) Where the employee is retired on pension or becomes disabled by injury or disease: for the full period of such retirement or disability. (b) Where the employee is given leave of absence or is temporarily laid off: for the full period of such leave of absence or lay-off if it shall extend for three months or less, or during the first three months of such leave of absence or lay-off, if it shall extend beyond three months.

"At the expiration of the respective periods above mentioned, unless the employee shall then return or

shall have theretofore returned to active work, his insurance hereunder shall terminate automatically."

From November 5, 1941, until January 29, 1958, Kelly worked for the railroad as a trainmaster. On January 29, 1958, he was informed by his supervisor that his job would be abolished because of lack of business and that he would be furloughed as of February 28, 1959. He was advised at that time that no further premiums would be accepted and that he should apply for a conversion of his individual coverage. This notification was given to him verbally by a vice-president of the railroad. At that time he was given his salary for the month of February, from which the railroad had deducted the insurance premium for the month of February. A short time later Kelly gave the railroad a check for the premium which would be due for March, April and May. The railroad never received any other premiums. On September 9, 1958, a tender was made to the railroad by Kelly of a check dated August 29, 1958, in the amount of $14 for his contribution toward the premiums due for July, August and September. The railroad refused to accept the check and this action followed.

Subsequently Kelly amended his original complaint to include the following: "Tenth: On and prior to May 31st, 1958, your plaintiff had become totally and permanently disabled by illness and disease as to be thereafter unable to substantially follow the duties of his occupation, which said disability has been continuous up to the present time." To which the railroad filed the following answer: "1. Defendant Montour Railroad Company is without knowledge or information as to the truth of the averments contained in paragraph Tenth of the Amendment to Complaint because the means of proof are within the exclusive control of the plaintiff, and proof thereof is demanded at trial."

The record also indicates that on or about January 1, 1959, the claimant received a disability pension from the railroad retirement board. He claimed that his disability dated from sometime prior to May 31, 1958, the last month for which premiums were paid on his group coverage.

The railroad complains that in the conference of counsel in chambers, at time of trial, when it was agreed to submit the case on briefs, that it was also agreed that in the event Kelly's furlough status was such that he continued as an employee for insurance purposes, and was not on layoff or leave of absence and had not ceased active employment for more than three months, then, and only then, would he be entitled to reinstatement of his group coverage. This the railroad contends was the sole question before the court.

However, the court also decided that even if Kelly did not remain an employee he was nevertheless disabled before his employment ended. We are convinced that the disability question could not be properly decided on the pleadings in this record without the taking of additional testimony. The only question, therefore, before us for decision is whether an employee who has been "furloughed" is in the same status as an employee who has been placed on "lay-off".

The court below determined that there is a difference and that if he was just "furloughed", he remained an employee for purposes of group insurance coverage. We cannot see how the fact that he was a trainmaster rather than a brakeman or any other employee can change the meaning of the language of the policy. In fact, in the United States Army furloughs are given only to cadets and enlisted men, officers being given leaves of absence. If furlough is identical to layoff then, if continued beyond three months, the group insurance coverage automatically ceases. The court below seemed to think there was some magic in the use

of the word furlough; most certainly the same result could come about if he were told he was temporarily laid off or granted a leave of absence. The relationship of employer and employee may well have been sustained in each case but work ceased as of the date the furlough, layoff or leave of absence came into effect.

We think the language of Judge HIRT in *Brown v. Carnegie-Illinois Steel Corp.*, 168 Pa. Superior Ct. 380, 383, 77 A. 2d 655 (1951), affirmed 368 Pa. 166, 81 A. 2d 562 (1951), is applicable here: "The obvious primary purpose of this type of insurance is to supply low cost insurance for the protection of workmen while actually employed." This purpose in the instant case was relaxed by the three-month extension provision but the policy provides that "cessation of active work by an employee shall be deemed to constitute the termination of his employment." This is fulfilled whether the employee is furloughed, laid off or given a leave of absence. Actively "at work" means performing the employee's customary work. *Elsey v. Prudential Ins. Co.*, 262 F. 2d 432, 1958.

In *Hanaieff v. Equitable Life Assur. Soc.*, 371 Pa. 560, 566, 92 A. 2d 202 (1952), Chief Justice HORACE STERN said as follows: ". . . it is clear that either the failure of the insurer to receive payments of the monthly premiums due, or the termination of the employment and resulting discontinuance of the employe's insurance as entered on the employer's records, causes an automatic cessation of the employe's insurance." This case held that the employer, for the purpose of collecting premiums, was the agent of the employee and not of the insurance company and it is clear in this case that premiums were not paid beyond the month of May. See also: *Peyton v. Equit. Life Assur. Soc.*, 159 Pa. Superior Ct. 318, 48 A. 2d 145 (1946); 68 A.L.R. 2d, 31n, 80n.

To try to distinguish between "lay-off", "temporary lay-off", "furlough" and "leave of absence" is a play on words. If an employee is furloughed, laid off temporarily or granted a leave of absence, he is not performing his accustomed work; he has ceased working and if this cessation of work continues beyond the three-month limitation for continued coverage under the policy, the insurance coverage automatically ends.

The order of the court below directing the reinstatement of the policy in that the furloughed employee remained an employee for purposes of group insurance coverage, is reversed, and the case is remanded to the court below for further hearing to determine whether the employee's alleged disability warrants the reinstatement of the insurance coverage.