Patrick **CONNELLY, Jeffrey Deabner, Ryan Dunmire, Cindy Levick, Julie Miller, Marguerite Luvara, Richard Pireaux, Catherine Pisula, Rebecca Russell, Kelly Sabo, Edmond Tozzi, and Bobbi Vargo, Appellants**

v.

The **STEEL VALLEY EDUCATION AS- SOCIATION, the Pennsylvania State Education Association, and the Steel Valley School District.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 14, 2015.

Decided July 28, 2015.

Carolyn E. Paletta, Pittsburgh, for appellants.

Richard E. McEwen, Edinboro, for appellees Steel Valley Education Association and Pennsylvania State Education Association.

Joseph W. Cavrich, Pittsburgh, for appellee Steel Valley School District.

BEFORE: RENÉE COHN JUBELIRER, Judge, and MARY HANNAH LEAVITT, Judge, and P. KEVIN BROBSON, Judge.

OPINION BY Judge MARY HANNAH LEAVITT.

Patrick Connelly, Jeffrey Deabner, Ryan Dunmire, Cindy Levick, Julie Miller, Marguerite Luvara, Richard Pireaux, Catherine Pisula, Rebecca Russell, Kelly Sabo, Edmond Tozzi and Bobbi Vargo (collectively, Teachers) appeal an order of the Court of Common Pleas of Allegheny County (trial court) dismissing Teachers' complaint against their union, Steel Valley Education Association (Union), the Pennsylvania State Education Association and the Steel Valley School District (School District). Teachers' complaint alleged that Union acted in bad faith by withdrawing Teachers' grievance in order to gain favorable treatment from the School District in negotiations over a new collective bargaining agreement. The trial court sustained the demurrer filed by the defendants after concluding that a labor union is not required to arbitrate a case that it considers non-meritorious. We affirm.

Teachers' complaint alleges the following relevant facts. Teachers were employees of the School District and members of Union as well as the Pennsylvania State Education Association (PSEA).[1] Union is the sole representative for its members in matters concerning the collective bargaining agreement (CBA) with the School District.[2]

On April 8, 2011, the School District informed Teachers by letter that they were being considered for a job furlough. Amended Complaint, ¶ 20; Reproduced Record at 205a (R.R. ——). On April 26, 2011, the Board of School Directors approved a resolution to eliminate a number of teaching positions because of "a substantial decrease in pupil enrollment" in the School District as well as a "curtailment or alteration of the educational program." Amended Complaint, ¶ 22; R.R. 205a. The School Board directed the Superintendent to identify the specific jobs to be eliminated, and he did so. On May 24, 2011, the School Board approved the Superintendent's recommendations and adopted a resolution naming those employees, including Teachers, who would be furloughed for the 2011–2012 school year. On May 25, 2011, the School Board notified Teachers by letter that they would be furloughed effective June 30, 2011. Amended Complaint, ¶ 26; R.R. 206a.

Article IV of the CBA governs the rights of Teachers in their employment; it incorporates by reference the Public School Code of 1949.[3] R.R. 243a.[4] Teach-

1. Teachers refer to Union as the "local affiliate" of PSEA. Amended Complaint, ¶¶ 1, 19; Reproduced Record at 203a, 205a.

2. The CBA in place at the time of Teachers' furloughs covered the 2006–2007 school year through the 2010–2011 school year.

3. Act of March 10, 1949, P.L. 30, as amended, 24 P.S. §§ 1–101–27–2702.

4. Article IV of the CBA, entitled "Rights of Professional Employees," states, in relevant part, as follows:

 A. **Statutory Savings Clause**
 Nothing contained herein shall be construed to deny or restrict any professional employee such rights as he may have under the Public School Code of 1949, as amended, or the Public Employee [sic]

ers believed that their furloughs violated Section 1124 of the Public School Code, 24 P.S. § 11–1124. At the time of their furlough, Section 1124 stated, in relevant part, as follows:

> Any board of school directors may suspend the necessary number of professional employees, for any of the causes hereinafter enumerated:
>
> (1) Substantial decrease in pupil enrollment in the school district;
>
> (2) *Curtailment or alteration of the educational program* on recommendation of the superintendent, concurred in by the board of school directors, *approved by the Department of Public Instruction,* as a result of substantial decline in class or course enrollments or to conform with standards of organization or educational activities required by law or recommended by the Department of Public Instruction[.]

24 P.S. § 11–1124(1), (2) (emphasis added).[5] Teachers believed that the School District violated Section 1124 by not obtaining the Pennsylvania Department of Education's approval prior to planning their furloughs. Amended Complaint, ¶¶ 29–30, ¶ 36, ¶¶ 39–42; R.R. 206a–208a. Teachers opted to grieve their furloughs through the Union instead of pursuing a local agency hearing before the School

> Relations Act, Act 195, or other applicable laws and regulations. The rights granted to professional employees hereunder shall be deemed to be in addition to those provided elsewhere.
>
> **B. Just Cause Provision**
> No Employee shall be disciplined, reduced in rank or compensation or deprived of any professional advantage without just cause. Any such action asserted by the Board, or any agent or representative thereof, shall be subject to the adopted grievance procedure.
>
> R.R. 243a.

Board.[6] Amended Complaint, ¶ 43; R.R. 208a.

On May 27, 2011, Union filed Grievance # 10–209 on behalf of Teachers challenging the furloughs. Amended Complaint, ¶ 44; R.R. 208a. The Superintendent denied the grievance. Amended Complaint, ¶ 47; R.R. 208a. Union appealed to the School Board. On June 29, 2011, the School Board denied the grievance. Amended Complaint, ¶ 49; R.R. 208a. On July 8, 2011, Union moved the grievance to arbitration. Amended Complaint, ¶ 50; R.R. 209a. Union promised Teachers that it would pursue their grievance to arbitration. Amended Complaint, ¶ 52; R.R. 209a.

On June 22, 2011, the School District requested the Department of Education's approval of its curtailment or alteration of the educational program. Amended Complaint, ¶ 30; R.R. 206a. The School District explained that the furloughs were necessary in order to achieve a balanced budget for the 2011–2012 school year; the letter did not mention that the furloughs had already occurred. Amended Complaint, ¶¶ 38–39; R.R. 207a. On December 20, 2011, the Department of Education approved the *curtailment or alteration* of the School District's educational program by the furloughs. Amended Complaint, ¶ 40; R.R. 207a.

---

**5.** All of the Department of Public Instruction's functions, powers and duties were transferred to the newly created Department of Education by Section 1 of the Act of July 23, 1969, P.L. 181, 71 P.S. § 1037.

**6.** Teachers can pursue either a grievance or a hearing before the School Board, but not both. *See* Section 1133 of the Public School Code, 24 P.S. § 11–1133 (mandating that professional employees "shall have the right to file a grievance under the collective bargaining agreement or request a hearing pursuant to section 1121 through 1132 [of the Public School Code], but not both.").

Upon learning of the Department's approval, Union sought advice from PSEA's legal counsel. Amended Complaint, ¶ 53; R.R. 209a. On January 30, 2012, a PSEA staff attorney, Mary Jo Miller, Esq., opined that because the Department had approved the School District's curtailment of its educational plan, Teachers' grievance lacked merit and should be withdrawn. Amended Complaint, ¶¶ 54–55; R.R. 209a.

On February 7, 2012, Union withdrew Grievance # 10–209 with prejudice before the scheduled arbitration hearing was held. Amended Complaint, ¶ 56; R.R. 209a. Union neither informed nor consulted with Teachers prior to withdrawing the grievance. Amended Complaint, ¶¶ 58–59; R.R. 210a. Nor did Union attempt to negotiate with the School District to allow Teachers to continue their challenge to the furloughs. Amended Complaint, ¶ 61; R.R. 210a. Teachers opposed the withdrawal of the grievance but could do nothing about it. Amended Complaint, ¶ 58, ¶ 60; R.R. 210a.

At the time Union withdrew the grievance, it was negotiating with the School District on a new CBA. Amended Complaint, ¶ 62; R.R. 210a. Prior to withdrawing the grievance, the negotiations were at an impasse. *Id.* Immediately after withdrawing the grievance, Union received a counter-offer from the School District improving its prior financial offer. Amended Complaint, ¶ 63; R.R. 210a.

Teachers assert that in terminating Teachers' grievance, Union acted "in bad faith and for the sole benefit of [Union] and its unfurloughed members" in order "to curry favor with the District at the bargaining table." Amended Complaint, ¶¶ 64–65; R.R. 210a. Teachers also assert that PSEA's staff attorney knowingly produced a "flawed" legal opinion to give Un-

ion a reason to withdraw the grievance. Amended Complaint, ¶ 57; R.R. 209a.

On March 12, 2012, Teachers sent a letter to the School District's solicitor requesting a hearing before the School Board to contest their furloughs. Amended Complaint, ¶ 66; R.R. 210a.[7] On October 23, 2012, the School Board denied Teachers' request because they had previously elected to pursue a grievance and their new request for a hearing violated the statute of limitations. Amended Complaint, ¶ 67; R.R. 211a. With the grievance terminated, Teachers were left with no avenue to challenge their furloughs. Amended Complaint, ¶ 68; R.R. 211a.

Teachers filed a civil complaint against Union for breach of the duty of fair representation. The complaint also named PSEA as a defendant. Union and PSEA filed preliminary objections. Teachers then filed an amended complaint naming Union, PSEA and the School District as defendants.

Count I of the amended complaint asserts that Union breached its duty of fair representation: (1) by failing to arbitrate Teachers' grievance; (2) by withdrawing the grievance immediately before the arbitration hearing; and (3) by not giving prior notice to Teachers. Teachers assert that Union did so to advance the CBA negotiations, to the detriment of Teachers. At a minimum, Teachers assert that Union's actions were arbitrary.

In Count II, Teachers assert that PSEA is vicariously liable as the parent affiliate for Union's breach of duty of fair representation. Teachers assert that PSEA's advice was wrong, entitling Teachers to monetary damages from the Union and PSEA.

In Count III, Teachers seek to compel arbitration between the School District

---

7. Although not mentioned in the amended complaint, apparently a hearing was held before the School Board in April 2012. School District's Brief at 5.

and Union *nunc pro tunc*.[8] Teachers assert that the School District violated Article IV of the CBA and, thus, they should be permitted an arbitration hearing with their own counsel representing them.

Union filed preliminary objections to the amended complaint asserting, *inter alia*, it did not state a cause of action because Union acted on the advice of counsel that the grievance lacked merit. Teachers did not plead facts, but only innuendo and opinion, to support their claims of bad faith. Further, the complaint did not specifically allege that Union and the School District conspired to deny Teachers their rights. PSEA and the School District also filed preliminary objections.

On April 17, 2014, the trial court sustained the preliminary objections and dismissed the amended complaint with prejudice. The trial court's single-page order states in relevant part as follows:

> As to all Defendants, the issue[s] raised herein are governed by the Public Employee [sic] Labor Relations Act which pre-empts this Court. Further, under *Ford Motor Co. v. Huffman*, a labor union is not required to take every grievance to arbitration.

Trial Court Order, April 17, 2014.

Teachers appealed to this Court. In its Pa.R.A.P. 1925(a) opinion, the trial court noted that Teachers "assert that they are victims of collusion between the School District and the Union [and PSEA] to sacrifice the furloughed [T]eachers in favor of a 'Sweetener' in the then pending negotiation for a successor [CBA]." Trial Court 1925(a) Opinion at 2. The trial court found that the amended complaint lacked the allegations needed to support that charge. The trial court determined that Teachers' allegations, even if taken as true, do not support the conclusion that the grievance was meritorious. Teachers were furloughed pursuant to a re-organization plan that was approved by the Department of Education, and PSEA's staff attorney advised Union that this approval rendered the grievance no longer meritorious. The trial court reasoned that "a union has no obligation to arbitrate what it deemed to be an unwinnable case. Thus that is why I dismissed the case." Trial Court 1925(a) Opinion at 3. The trial court reiterated its belief that the Pennsylvania Labor Relations Board, not the trial court, had jurisdiction over Teachers' bad faith claims.

## Appeal

On appeal, Teachers raise two main issues[9] for our consideration.[10] First, they assert that the trial court erred

---

8. Our Supreme Court has explained that when arbitration "is denied by the union's fraud or bad faith, the employer can be joined in the employee's action against the union for its bad faith breach of fiduciary duty and the [court] may fashion an appropriate equitable remedy which would permit grievance arbitration *nunc pro tunc*." *Martino v. Transport Workers' Union of Philadelphia, Local 234*, 505 Pa. 391, 480 A.2d 242, 243–44 (1984).

9. Teachers list three separate issues, but there are actually two main issues.

10. When an appellate court considers whether preliminary objections in the nature of a demurrer were properly sustained, the standard of review is *de novo* and the scope of review is plenary. *Mazur v. Trinity Area School District*, 599 Pa. 232, 961 A.2d 96, 101 (2008). A demurrer is properly sustained only if, based on the facts pleaded, it is clear and free from doubt that no recovery is possible. *Id.* If any doubt exists, it should be resolved in favor of overruling the demurrer. *Cornelius v. Roberts*, 71 A.3d 345, 347 n. 2 (Pa.Cmwlth.2013). The court must accept as true all well-pleaded, material and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts. *Id.* However, the court "need not accept as true conclusions of law, unwarranted inferences, allegations, or expressions of opinion."

in holding that the claims made in Teachers' amended complaint are governed and pre-empted by the Public Employe Relations Act [11] (PERA). Second, they argue that the trial court erred in granting the demurrer on the theory that labor unions need not submit every grievance to arbitration. Teachers contend that the trial court failed to review Teachers' claim of breach of the duty of fair representation under the appropriate standard, which considers the bad faith or arbitrary actions of a defendant.

### Jurisdiction

Turning to the first issue, Teachers argue that the trial court erred by holding that it lacked jurisdiction because Teachers' claims in the amended complaint are governed by PERA. Union and PSEA acknowledge that the trial court erred in this regard.[12] We agree.

A claim for breach of the duty of fair representation based on the union's refusal to submit a grievance to arbitration does not implicate PERA. *Ziccardi v. Department of General Services*, 500 Pa. 326, 456 A.2d 979, 980 (1982). As this Court has explained:

> Individual claims by employees against the union that allege a breach of the duty of fair representation do not qualify as unfair labor practices in violation of PERA. The PLRB's expertise lies in resolving disputes involving alleged violations of the provisions of PERA, not in remedying an individual injustice to an employee by an employee's representative union.

*Crozer Chester Medical Center v. Department of Labor and Industry, Bureau of Workers' Compensation, Health Care Services Review Division*, 610 Pa. 459, 22 A.3d 189, 194 (2011) (quoting *Bayada Nurses, Inc. v. Commonwealth*, 607 Pa. 527, 8 A.3d 866, 884 (2010)).

*Case v. Hazelton Area Educational Support Personnel Association (PSEA/NEA)*, 928 A.2d 1154, 1161 (Pa.Cmwlth.2007). An employee's exclusive remedy for his union's refusal to submit a grievance to arbitration is a civil action against the union for breach of its duty of fair representation. *Ziccardi*, 456 A.2d at 981.

The trial court erred in holding that it lacked jurisdiction over Teachers' claim that Union breached its duty of fair representation. The question, then, is whether the trial court correctly dismissed the amended complaint for failure to state a claim.

### Breach of Duty of Fair Representation

Teachers assert that the trial court erred in holding that under *Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953), unions need not submit every grievance to arbitration. This was error because unions do not have unfettered discretion; unions have a duty of fair representation of their members. Teachers argue that their pleading was sufficient because it contains allegations that Union breached its duty of fair representation "by withdrawing [Teachers'] grievance solely to improve its own position during [CBA] negotiations" with the School District. Teachers' Brief at 21.

Union and PSEA rejoin that the trial court correctly dismissed the amended complaint because Teachers did not show a violation of the CBA. Teachers' amended complaint established that Union sought legal advice from PSEA, which concluded that the grievance no longer had merit and recommended that it be withdrawn; fol-

---

**11.** Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301.

**12.** Union and PSEA have filed one brief in this appeal and the School District has filed a separate brief.

lowing that advice was neither arbitrary nor an act of bad faith. Union and PSEA also argue that Teachers' claim that the grievance was withdrawn to obtain bargaining concessions from the School District is not supported by the requisite specific factual allegations. Rather, it is an argument based upon speculation, opinion, unwarranted inferences and unreasonable conclusions. Because the CBA had expired immediately prior to the 2011–2012 school year, the parties were legally obligated to be bargaining in early 2012, regardless of the status of any grievances. Further, the parties did not agrée on a new CBA until "many months" after Teachers' grievance was withdrawn, which defeats Teachers' theory that any *quid pro quo* ever existed. Union and PSEA Brief at 20.[13]

 Labor unions, as exclusive bargaining representatives for their members, have broad discretion in the execution of their duties. The United States Supreme Court has explained that discretion as follows:

> The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.

*Ford Motor Co.,* 345 U.S. at 338, 73 S.Ct. 681. A union's discretion is not without limits. It has a fiduciary obligation to fairly represent all of its members and to protect their rights. *Case,* 928 A.2d at 1158. The union breaches this duty of fair representation if its actions towards its members are due to "arbitrariness, discrimination or bad faith." *Casner v. American Federation of State, County and Municipal Employees,* 658 A.2d 865, 870 (Pa.Cmwlth.1995). A union's actions can be considered arbitrary

> only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a "wide range of reasonableness," *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953), as to be irrational.

*Air Line Pilots Association, International v. O'Neill,* 499 U.S. 65, 67, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991).

 On the other hand, union members do not have a right to have every grievance taken to arbitration. *Vaca v. Sipes,* 386 U.S. 171, 191, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Rather, the labor union has broad discretion to pass upon and withdraw grievances. *Hughes v. Council 13, American Federation of State, County and Municipal Employees, AFL–CIO,* 157 Pa.Cmwlth. 96, 629 A.2d 194, 195 (1993). A breach of the duty of fair representation occurs if the union arbitrarily or in bad faith refuses to move what appears to be a *"meritorious* grievance" to arbitration. *Vaca,* 386 U.S. at 191, 87 S.Ct. 903 (emphasis added). If the union, having assessed the merits of a particular grievance

---

**13.** For its part, the School District points out that the amended complaint contains no allegations that the School District participated in the decision to withdraw the grievance or conspired with Union or PSEA to have Union withdraw the grievance. The School District argues that because Teachers failed to show that Union acted in bad faith towards them, there is no basis to compel the School District to participate in an arbitration hearing *nunc* *pro tunc.* The School District also argues that the trial court lacked jurisdiction over the amended complaint because Teachers failed to exhaust their remedies when they did not appeal the School Board's October 26, 2012, adjudication denying Teachers' request for a local agency hearing to contest their furloughs. Based on our disposition of Teachers' appeal, we need not address these arguments.

in good faith and in a nonarbitrary manner, is satisfied that the grievance lacks merit, it may end the grievance prior to arbitration, which is "the most costly and time-consuming step in the grievance procedures." *Id.*

In Teachers' breach of duty of fair representation claim, the focus must be on Union's actions. In their amended complaint, Teachers make the following allegations about the merits of their grievance:

28. The furloughing of [Teachers] was part of the implementation of curtailments or alterations in the District's education[al] program that took place by the [District], albeit without the [Department of Education's] prior approval.

\* \* \*

53. After receiving approval of the District's curtailments or alterations from the [Department of Education] on December 20, 2011, the [Union] sought advice from the legal counsel of PSEA regarding the merits of [Teachers'] grievance.

54. In a letter dated January 30, 2012, PSEA staff attorney Mary Jo Miller provided her opinion based upon an analysis of only 24 P.S. § 11–1124(2).

55. Attorney Miller opined that because the District had received [Department of Education] approval of its curtailments on December 20, 2011, [Teachers'] grievances lacked merit and should be withdrawn by the [Union], accordingly.

56. Allegedly based upon the legal counsel of PSEA's staff attorney, the [Union] withdrew Grievance # 10–209 on February 7, 2012 with prejudice and without notice to or consultation with [Teachers].

57. Inasmuch as [the Union] purposely concealed its intent to withdraw the grievance, [Teachers] contend that Attorney Miller's legal opinion is flawed and upon information or belief contend she knew as much as she was providing a justification for [the Union] to withdraw its grievance.

Amended Complaint, ¶ 28, ¶¶ 53–57; R.R. 206a, 209a.

The Department of Education approved the School District's furloughs and when this approval occurred, PSEA advised Union that Teachers' grievance lacked merit. Amended Complaint, ¶¶ 53–55. The trial court dismissed the amended complaint because "a union has no obligation to arbitrate what it deemed to be an unwinnable case." Trial Court 1925(a) Opinion at 3. We agree.

Union took up the matter of Teachers' furloughs and moved it to arbitration. The gravamen of the grievance was that the School District violated Section 1124(2) of the Public School Code by furloughing Teachers without first obtaining approval from the Department of Education. Union withdrew the grievance only when it was advised that the grievance lacked merit. This was sound advice under our precedent.

In *Coyle v. Middle Bucks Area Vocational Technical School*, 654 A.2d 15, 17 (Pa.Cmwlth.1994), this Court held that the Department need not approve the curtailment or alteration of an educational program *before* a furlough becomes effective. *Id.* In *Coyle*, the Court held that the furlough, or suspension, of a teacher was valid where the Department approved the curtailment of the school district's educational program before the scheduled hearing to contest the furlough. *Id. See also Cadonic v. Northern Area Special Purpose Schools*, 57 Pa.Cmwlth. 42, 426 A.2d 186 (1981) (upholding furlough of guidance counselor under Section 1124(2) of Public School Code where Department approval was ob-

tained before final day of hearing challenging furlough). Notably, in 2012 the legislature amended Section 1124 to remove any requirement of Department approval.[14] Based on *Coyle* and *Cadonic*, PSEA's legal opinion that the grievance lacked merit was not "flawed," as alleged by Teachers. Amended Complaint, ¶ 57; R.R. 209a.[15]

In light of Teachers' factual allegations that Union sought legal counsel and learned that the grievance lacked merit, Teachers' amended complaint fails to state a claim that Union acted arbitrarily or in bad faith in refusing to take Teachers' grievance to arbitration. Teachers cannot make out a case for breach of the duty of fair representation on the part of Union. *Vaca*, 386 U.S. at 191, 87 S.Ct. 903.

Teachers' rationale focuses on what they allege to be Union's ulterior motive, *i.e.*, to curry favor with the School District. The real question is whether Union assessed the merits of Teachers' grievance in good faith and in a nonarbitrary manner.

Teachers' allegation that Union withdrew their grievance "solely to improve its own position during negotiations with [the School District]" is inconsistent with other allegations that Union withdrew the grievance after seeking and receiving legal advice that it lacked merit. Teachers' Brief at 21. The advice was correct. It is irrelevant that this step may have improved the atmosphere for CBA negotiations. Union had legitimate grounds to withdraw the grievance.

In short, based on the pleaded facts in the amended complaint, Teachers failed to state a claim for breach of the duty of fair representation. Therefore, the trial court did not err in granting a demurrer and dismissing the complaint and its order is affirmed.

### ORDER

AND NOW, this 28th day of July, 2015, the order of the Court of Common Pleas of Allegheny County dated April 17, 2014, in

**14.** Section 1124 now states, in relevant part, as follows:

(a) Any board of school directors may suspend the necessary number of professional employes, for any of the causes hereinafter enumerated:

(1) substantial decrease in pupil enrollment in the school district;

(2) curtailment or alteration of the educational program on recommendation of the superintendent and on concurrence by the board of school directors, as a result of substantial decline in class or course enrollments or to conform with standards of organization or educational activities required by law or recommended by the Department of Public Instruction[.]

\* \* \*

(b) Notwithstanding an existing or future provision in a collective bargaining agreement or other similar employment contract to the contrary, *suspension of a professional employe due to the curtailment or alteration of the educational program as set forth in subsection (a)(2) may be effectuated without*

*the approval of the curtailment or alteration of the educational program by the Department of Education,* provided that, where an educational program is altered or curtailed as set forth in subsection (a)(2), the school district shall notify the Department of Education of the actions taken pursuant to subsection (a)(2). The Department of Education shall post all notifications received from a school district pursuant to this subsection on the Department of Education's publicly accessible Internet website. 24 P.S. § 11–1124 (emphasis added). Subsection (b) was added by the Act of June 30, 2012, P.L. 684.

**15.** Even if the PSEA staff attorney's legal opinion that the grievance lacked merit had turned out to be incorrect, Union would not be guilty of a breach of its duty of fair representation so long as Union made a decision about the merits of the grievance in good faith and in a nonarbitrary manner. *Vaca*, 386 U.S. at 194–95, 87 S.Ct. 903.

the above-captioned matter is hereby AF-
FIRMED.