# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mindy McFetridge,                      :
                   Petitioner    :
                                                   :
               v.                        :     No. 219 M.D. 2022
                                                   :
American Federation of State,          :
County and Municipal Employees,        :
Council 13 and Pennsylvania            :
Department of Transportation,          :
                     Respondents    :     Argued:  February 3, 2026


BEFORE:    HONORABLE ANNE E. COVEY, Judge
                  HONORABLE STACY WALLACE, Judge
                  HONORABLE MATTHEW S. WOLF, Judge


## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE WOLF                                   FILED:  March 17, 2026


        Before this Court is an original jurisdiction action filed by Mindy McFetridge against American Federation of State, County and Municipal Employees, Council 13 (Union) and her employer, the Pennsylvania Department of Transportation (Department).  Through her Petition for Review, McFetridge brings a claim alleging that the Union breached its duty of fair representation and that the Union and the Department, together, failed to properly follow the collective bargaining agreement's (CBA) seniority provisions during an approximately four-week[1] period when McFetridge was placed on leave without pay due to the COVID-

---

[1] The exact time period is not clear from the pleadings.

19 pandemic. During this period, McFetridge alleges a skeleton crew comprised of less senior union members continued working and that the Union failed to file a grievance on her behalf regarding this CBA violation. McFetridge also alleges that the actions of the Union and the Department were rooted in sex discrimination. Presently before this Court are two Applications for Summary Relief, filed by the Union and the Department, respectively. Concluding that there are outstanding issues of material fact, we deny both Applications.

## I.     McFetridge's Petition for Review

McFetridge's Petition for Review alleges as follows. McFetridge is employed by the Department as a Transportation Equipment Operator B (TEO-B) in Venango County. Petition for Review ¶14. She is a dues-paying member of the Union, which is an "employe organization" for the purposes of the Public Employe Relations Act[2] (PERA). *Id.* ¶¶8-10, 14. The Union and the Department maintain a CBA[3] governing the terms of Union member employment as well as the processing of grievances. *Id.* ¶18.

McFetridge states that on or around March 2020, the Department ceased operations at her place of work as a result of the onset of the COVID-19 pandemic. *Id.* ¶22. At this time, McFetridge and other employees were offered "paid office closing time" by the Department, which ended on April 11, 2020. *Id.* ¶¶23-24. Following the end of paid office closing time, McFetridge and others who were not permitted to continue working were given the option to use paid time off (PTO) or file for unemployment. *Id.* ¶24. McFetridge chose to use approximately

___

[2] Act of July 23, 1970, P.L. 563, No. 195, 43 P.S. § 1101.301(3).

[3] The furlough provision that McFetridge contends was violated is found in Article 29, Section 7 of the CBA, and reads in part: "When the Employer determines that a furlough is necessary within a seniority unit, employees will be furloughed in the inverse order of Master Agreement seniority." McFetridge's Brief, Exhibit A (Collective Bargaining Agreement) at 63.

two weeks of PTO because she did not wish to lose any seniority rights pursuant to the CBA. *Id.* ¶25. After using two weeks of PTO, McFetridge took unemployment compensation until the Department resumed normal operations. *Id*. ¶26.

McFetridge alleges that during this period, one crew of TEO's continued work for the Department in Venango County. Pet. for Rev. ¶30. Union and/or Department officials initially explained to McFetridge that this crew was permitted to continue working because they had access to handwashing facilities. *Id.* ¶31. Of the individuals who continued to work, McFetridge alleges that at least three were less senior than her pursuant to the terms of the CBA. *Id.* ¶¶32-33. One of the members of this crew was the president of the local Union executive board, Jonathon Reisinger (Reisinger). *Id.* ¶34. The Petition further alleges that others working on the crew were local Union executive Board members and/or relatives or friends of Reisinger, and all were men. *Id.* ¶¶35-37.

After learning that the continuing work crew included members less senior than McFetridge, she reached out to her Union representative. *Id.* ¶¶38. She was told by Union officials that there was "nothing she can do about it," and was offered no further explanation. *Id*. ¶¶39-40. Eventually, Union officials told McFetridge that the Union and the Department gave Reisinger the option to lay off employees by seniority or by specific working crew, and he opted for the latter. *Id.* ¶¶42-43. McFetridge alleges that this decision was made so that Reisinger's crew could continue operating. *Id.* ¶¶43-45. She states that the Department's and the Union's approval of Reisinger's arbitrary, discriminatory and bad faith selection of the employees that could continue to work is contrary to the seniority and furlough provisions of the CBA. *Id.* ¶¶45-48. She further states that Union officials later explained that the Department and the Union were permitted to conduct layoffs by

crew as opposed to seniority because this period of time did not constitute a furlough. *Id.* ¶¶48-50. McFetridge disputes this characterization of the relevant time period. *Id.* ¶¶51-52.

McFetridge alleges that she subsequently reached out to Union officials requesting that it file a grievance on her behalf regarding the staffing decisions that were contrary to the CBA. Pet. for Rev. ¶53. She was told, without explanation, that no grievance would be filed on her behalf. *Id.* At some point, another Union official told her that some paid time off may be returned to her, but that official later stopped answering McFetridge's phone calls. *Id.* ¶54-55. McFetridge maintains that the Department did not permit all its locations to perform layoffs based on working crew rather than seniority, and only Department employees of Venango County and one to two other counties were subject to this procedure. *Id.* ¶56.

On these allegations, McFetridge submits that the Union conspired with the Department to ignore the seniority and furlough provisions of the CBA in favor of Reisinger's crew's continued work and that the Union subsequently violated its duty of representation to McFetridge by failing to file a grievance on her behalf. *Id.* ¶¶58-60. She further alleges that failure was made based upon discrimination regarding her sex. *Id.* ¶61. Accordingly, the Petition sets out a cause of action for breach of the duty of fair representation against the Union and the Department, based upon the decision not to follow seniority/furlough provisions during this period. *Id.* ¶¶62-75. She asks this Court to (1) enter judgment against the Union; (2) award compensatory damages against the Union and the Department; and (3) award

4

damages against the Union for non-economic harm including but not limited to mental anguish and distress in an amount to be proven at trial. *Id.*, Prayer for Relief.[4]

The Union and the Department filed answers with new matter denying McFetridge's material allegations. The case proceeded to discovery.

## II.    Discovery

During the course of discovery, seven individuals were deposed, including McFetridge, Reisinger, and the Department's former Maintenance Manager for Venango County, Paula Klingler (Klingler). We discuss the relevant portions of the depositions in turn.

### a.  McFetridge's Deposition Testimony

McFetridge testified that she is a TEO-B for the Department and a member of the Union. McFetridge's Brief, Exhibit A (McFetridge Dep.) at 33-34. She testified that the staffing of crews is generally done through a bidding process, with union members placing bids on open positions in order of seniority. *Id.* at 47. She testified that she was "around the middle" of the seniority hierarchy for those holding her position in Venango County. *Id.* at 50.[5] She further testified that she was the only woman in Venango County to hold her position. *Id.* at 55-56. McFetridge testified that during the COVID-19 shutdown, after an initial paid leave period, she was placed on leave without pay and given the option to expend PTO or collect unemployment. *Id.* at 96, 121-24. During this time she expended two weeks of PTO, during which time she continued to accrue seniority, and was subsequently unpaid, but still receiving health benefits, for a period of approximately two to three

---

[4] McFetridge's prayer for relief also asks for costs and fees, including reasonable attorney's fees. She withdraws that request in her brief filed July 9, 2025. *See* McFetridge's Br., 7/9/2025, at 31 n.9.

[5] She was 30th out of 46 TEO-Bs. *See* McFetridge Dep. at 53-55 (referring to Dep. Ex. M-4 at AFSCME 63-64).

weeks before returning to work. *Id.* at 121-24. During this period, fourteen other TEO-Bs continued working at a "main shed" location. This crew, referred to as the skeleton crew, was comprised of two crews already working at such location, pursuant to an earlier seniority-based bidding process (the "winter bid"[6]), prior to the COVID-19 pandemic and staffing reduction. *Id.* at 77-79 (discussing Dep. Ex. M-6). McFetridge testified that she had not been part of the main shed crew prior to the staffing reduction, but rather had been working at a different location, pursuant to her winter bid. *Id.* at 74. McFetridge acknowledged that she likely would not have been part of the skeleton crew, had it been staffed strictly according to seniority, given her place on the seniority hierarchy. *Id.* at 200. McFetridge also testified that the less senior employee closest to her in terms of seniority was approximately three months less senior, and during the period at issue closed that seniority gap by approximately two weeks. *Id.* at 167-68, 173.

McFetridge testified that she reached out to multiple Union executives regarding the staffing decision and was told "[t]hat they were looking into it and going to work on it" and further that "they were going to see what they could do to

---

[6] McFetridge described this process in her deposition testimony as such:

> Winter bid is [when] we have a bid day. We all come to Franklin, Venango County garage and . . . . we go to the front office and they have the bid sheets and the most senior person -- the three most senior people [--] are called into the front office.
>
> The bid sheets are laid out. The most senior person gets to pick the top slot, any slot he chooses, he or she chooses.
>
> The next person in seniority has one less option, so on and so forth until the last person has bid.

McFetridge Dep. at 47.

get seniority time back." McFetridge Dep. at 108. She stated that she followed up on the issue approximately a year later, ultimately requesting a grievance be filed on her behalf and was told by her Union staff representative, Randy Wilson, that nothing could be done about the seniority issue and no grievance could be filed. *Id.* at 109-14. She further testified that the loss of seniority and failure of the Union to help caused her mental distress, and that as a result of the skeleton crew staffing plan, she lost seniority relative to less senior TEO-Bs who continued to work while she did not. *Id.* at 175-76, 200-01.

### b. Reisinger's Deposition Testimony

Reisinger testified that he was the president of the Union's local executive board during the relevant period, having been elected to such position in summer or fall of 2019. McFetridge's Brief, Exhibit D (Reisinger Dep.) at 21. He testified as to the CBA's general grievance procedure, with which he had experience both as president and previously as chief steward of the local executive board. *Id.* at 22-24. Reisinger further testified as to the decision to staff the skeleton crew, noting that the Department presented him with a plan for the shutdown. *Id.* at 33. The plan was for "A Shift" and "B Shift", both of which currently worked at the main shed, to continue working. A Shift would work the first week and B Shift would work the second week. *Id.* Regarding staffing at the beginning of the COVID-19 pandemic, Reisinger stated "[a]t the very beginning, the Local Union wanted to go by seniority[,]" and Klingler, the Department's maintenance manager, rejected this idea. *Id.* at 62. He stated that Klingler presented him with the plan for which crews would continue working. *Id.* at 33-34. He also testified that he found Klingler difficult to work with. *Id.* at 30.

7

### c. Klingler's Deposition Testimony

Klingler testified in her deposition that she was the Venango County maintenance manager at the relevant time. McFetridge's Brief, Exhibit E (Klingler Dep.) at 19. She also testified that in her position, her duties included negotiating agreements with the Union as well as working through grievances. *Id.* at 21. She noted with respect to the initial staffing reduction that they "were supposed to have a skeleton crew [] of people and the only place we had running water was our main shed." *Id.* at 23. When asked about how she and the local Union leadership came to the decision to keep the main shed crews working during the staff reduction, she testified that the decision "was a consensus within the room" between herself and local Union leadership. *Id.* at 26.

Following discovery, the Union and the Department moved for summary relief.

### III.    Standard for Summary Relief

Pennsylvania Rule of Appellate Procedure 1532(b) governs requests for summary relief in cases filed pursuant to this Court's original jurisdiction. Pa.R.A.P. 1532(b). This Court has explained that:

> Pa.R.A.P. 1532(b) provides that "[a]t any time after the filing of a petition for review in an appellate or original jurisdiction matter[,] the court may on application enter judgment if the right of the applicant thereto is clear." Pa.R.A.P. 1532(b). "An application for summary relief is properly evaluated according to the standards for summary judgment." *Myers v. Commonwealth*, 128 A.3d 846, 849 (Pa. Cmwlth. 2015). That is, in ruling on a motion for summary relief, the evidence must be viewed in the light most favorable to the non-moving party and *the court may enter judgment only if: (1) there are no genuine issues of*

8

> *material fact; and (2) the right to relief is clear as a matter of law.*

*Flagg v. Int'l Union, Sec., Police, Fire Pros of Am., Local 506*, 146 A.3d 300, 305 (Pa. Cmwlth. 2016) (emphasis added). Simply put, we grant an application for summary relief only if the applicant's right to relief is clear, meaning the only remaining questions are legal rather than factual. *Phantom Fireworks Showrooms, LLC v. Wolf*, 198 A.3d 1205, 1220 (Pa. Cmwlth. 2018) (en banc). A genuine dispute of fact precludes summary relief. *Id.* The record for purposes of considering a motion for summary judgment consists of pleadings, depositions, answers to interrogatories, admissions and affidavits. *Meggett v. Dep't of Corr.*, 892 A.2d 872, 879 n.13 (Pa. Cmwlth. 2006) (citing Pa.R.A.P. 106 (certain Pennsylvania Rules of Civil Procedure apply to appellate courts in matters brought in the court's original jurisdiction)); Pa.R.Civ.P. No. 1035.1 (defining the record for considering a request for summary judgment).

### IV. Union's Application for Summary Relief

The Union seeks summary relief on the basis that McFetridge has failed to adduce any evidence that she was harmed by the Union's actions during the relevant time period, and thus she lacks standing to bring the instant action. Specifically, it asserts that she lacked the seniority to have been offered work on the skeleton crew even if positions were filled by seniority alone. It further contends that McFetridge has suffered no harm from her loss of approximately two-to-three weeks of seniority relative to a small number of less senior TEO-Bs, as none of these less senior employees "leapfrogged" over McFetridge in terms of seniority.

The Union also contends that McFetridge has failed to establish a claim for a breach of duty of fair representation as the staffing decisions made at the onset

9

of the COVID-19 pandemic were not arbitrary, discriminatory, or made in bad faith. The Union rejoins that these decisions properly considered safety, certifications, and seniority, which were prudent given the unprecedented circumstances presented by the COVID-19 pandemic. Additionally, the Union maintains that McFetridge was not "furloughed" as contemplated in the CBA, as she was offered paid office closing leave for a period, and after that ended, given the options to use accrued leave or take unpaid leave while retaining health benefits. Accordingly, it argues that the seniority/furlough provisions of the CBA were not applicable. It also contends, presumably in the alternative, that the local executive board members of the Union were entitled to "superseniority" in the event of a furlough, so some of the employees less senior to McFetridge who continued working would have continued working pursuant to such superseniority. The Union submits that any testimonial conflict as to who made the decision to staff the skeleton crew does not create an issue of material fact that precludes a grant of summary relief. Finally, the Union asserts that McFetridge is not entitled to compensatory damages or a jury trial and asks this Court to strike those requests from the Petition for Review.

### a. Standing

As it is a threshold issue, we turn first to the Union's contention that McFetridge lacks standing to bring the instant action because she has not suffered any actual harm as a result of the staffing decisions made at the onset of the COVID-19 pandemic.

A litigant has standing if she has a "substantial, direct, and immediate interest in the outcome of the litigation." *Funk v. Wolf,* 144 A.3d 228, 243 (Pa. Cmwlth. 2016) (internal brackets, quotation marks and citations omitted). "An interest is substantial when it surpasses the interest of all citizens in procuring

10

obedience to the law; it is direct when the asserted violation shares a causal connection with the alleged harm; and it is immediate when the causal connection with the alleged harm is neither remote nor speculative." *Ball v. Chapman*, 289 A.3d 1, 19 (Pa. 2023) (internal quotation marks omitted). "While the harm alleged must be substantial, it need not be pecuniary in nature." *Funk*, 144 A.3d at 244 (internal quotation marks and citations omitted). "[S]ome interests will suffice to confer standing even though they are neither pecuniary nor readily translatable into pecuniary terms." *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 281 (Pa. 1975). "Similarly, even when the interest is pecuniary there is no minimum threshold on its magnitude." *Id.* (internal quotation marks omitted).

We disagree with the Union that McFetridge lacks standing to bring the instant claim. Even if McFetridge would not have been part of the skeleton crew had seniority rules been followed, and while she has not been "leapfrogged" in terms of seniority, her relative loss of seniority to some less senior bargaining unit members during the time she was not permitted to work constitutes an alleged harm that is not merely speculative. It is clear from the evidence of record that during this period, McFetridge was forced to expend PTO in a manner that less senior employees did not, in spite of the CBA provisions. As a result, she is now at greater risk of being leapfrogged in the future by less senior employees.[7] This relative loss

---

[7] Respondents argue that of the five employees less senior than McFetridge who remained working, two were executive board members for the Union, and therefore entitled to superseniority (meaning they would continue working in a furlough). Regardless of the number of less senior union members who gained seniority on McFetridge during this period, this is still a harm to McFetridge. We need not nitpick over the amount of harm (whether it relates to the number of less senior employees gaining seniority on McFetridge or the number of days gained) at this stage, simply finding that actual harm exists allows McFetridge's suit to survive the Union's standing challenge. *See, e.g.*, *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269 (Pa. 1975).

of seniority, which essentially allowed less senior employees to "close the gap" in terms of seniority, is an actual concrete result of the staffing decisions. That such harm may not be quantifiable in a pecuniary manner does not mean it is insufficient to establish standing. Accordingly, we reject the Union's contention that McFetridge lacks standing here.

### b. Breach of Duty of Fair Representation

We turn next to the Union's claim that McFetridge has failed to show that the Union's staffing decisions were arbitrary, discriminatory, or made in bad faith.

It is well settled that a union "bears a heavy duty of fair representation to all those within the shelter of its protection." *Falsetti v. Local Union No. 2026, United Mine Workers of America*, 161 A.2d 882, 895 (Pa. 1960). The "[U]nion breaches [its] duty of fair representation if its actions towards its members are due to 'arbitrariness, discrimination or bad faith.'" *Connelly v. Steel Valley Educ. Ass'n*, 119 A.3d 1127, 1134 (Pa. Cmwlth. 2015) (quoting *Casner v. Am. Fed'n of State, Cnty. and Mun. Emps.*, 658 A.2d 865, 870 (Pa. Cmwlth. 1995)).

McFetridge rejoins that the Union acted arbitrarily and in bad faith by prioritizing the interests of Union leaders and their favored coworkers over contractually mandated seniority rights. She further argues that the Union's failure to file a grievance on her behalf and the Union's misleading assurances of rectification demonstrate a breach of its duty of fair representation. She further contends that there are outstanding issues of material fact that preclude a grant of the Union's request for summary judgment, especially as it relates to conflicts in the deposition testimony as to whether the Union or the Department made the decision to staff the skeleton crews.

12

Mindful of the standards applicable to a request for summary relief and resolving doubts as to the existence of disputes of material fact in favor of the non-moving party (here, McFetridge), we agree with McFetridge's contention that there are multiple issues of material fact outstanding that preclude us from granting the Union's request for summary relief on the basis that she cannot state a claim for the breach of duty of fair representation. As noted by McFetridge, there is conflicting deposition testimony as to who made the decision to staff the skeleton crews that continued to work during the relevant period. Further, there is conflicting testimony as to why the staffing decisions were made, with McFetridge arguing bad faith and self-dealing by Union leadership and their friends, and the Union and the Department citing pandemic-related safety concerns. Additionally, the nature of the period at issue – whether it be a furlough or something else – is also subject to dispute and is material to whether the CBA's seniority/furlough provisions apply to this matter. While the Union contends that McFetridge was not furloughed, McFetridge contends that she was.[8]

---

[8] Here, the temporary cessation of work and payment is functionally very similar to a furlough in spite of the fact that employees continued to receive benefits and were permitted to use PTO. As a popular adage instructs: a bird that walks like a duck, swims like a duck, and quacks like a duck may be appropriately called a duck. At the very least, whether the leave at issue was a furlough subject to the furlough provisions of the CBA is a disputed material fact. While not controlling on the instant case, we find the Superior Court's reasoning in *Kelly v. Montour Railroad Company*, 171 A.2d 632, 634 (Pa. Super. 1961), influential. In determining the nature of an employee's absence from employment under an insurance agreement, our sister court stated: "To try to distinguish between 'lay-off', 'temporary lay-off', 'furlough' and 'leave of absence' is a play on words." *Id.*

Notably, this is also another point of dispute between the Department and the Union, with the Department explicitly referring to this period as a "temporary furlough" and taking issue with references made by McFetridge to this period as a "layoff." Department's Brief at 13.

### c. Compensatory Damages/Jury Trial

Last, the Union asks this Court to strike the demands in McFetridge's Petition for Review for compensatory damages and a jury trial. McFetridge responds that where there is evidence tending to show that the Department actively participated with the Union's bad faith staffing decisions, a jury trial and demand for damages is proper.

McFetridge's contention that a jury trial and damages may be appropriate where the Department actively participated in the Union's bad faith is supported by our case law. *See Garzella v. Borough of Dunmore*, 62 A.3d 486, 493 (Pa. Cmwlth. 2013) (discussing a jury trial for damages held in a breach of duty of fair representation case). As discussed above, there are material issues of fact as to whether the Union acted in bad faith. Moreover, as addressed in Section V below, there are issues of material fact as to how the decisions to staff the skeleton crew were made and by whom, including whether the Department actively participated in such decision making alongside the Union. Therefore, summary relief denying McFetridge's jury trial and damages demands[9] is not appropriate at this time.

### V. Department's Application for Summary Relief

The Department's application for summary relief, while mirroring some of the Union's assertions, varies based on its position as McFetridge's employer. For its part, the Department argues that McFetridge has failed to show that the Department conspired, colluded, or actively participated in the Union's

---

[9] At oral argument, McFetridge's counsel suggested that a jury trial and damages are not the relief actually sought by McFetridge. Rather, it appears that the relief she seeks sounds in equity, namely a reinstatement of her PTO. It is unclear if McFetridge believes that this Court can offer that relief directly or if she simply asks this Court to order that the Union engage in the grievance process with this result as her goal. Because no dispositive motion by McFetridge is currently before us, we decline to further speculate.

14

alleged bad faith.   The Department also argues generally that McFetridge has failed to show harm as a result of the staffing decisions at issue.[10]

This Court has previously explained that an employer may become liable for a union's breach of its duty of fair representation only where an employee shows "by specific facts, that the employer actively participated in the union's bad faith or that the employer conspired or colluded with the union to deny the employee his rights under the labor contract." *Garzella*, 62 A.3d at 494.

In support of its application, the Department argues that there is no evidence that it conspired, colluded, or actively participated with the Union in the Union's alleged breach of the duty of fair representation owed to McFetridge.  The Department contends that staffing decisions during the pandemic were made by the Union, and contrary to Klingler's testimony, the Department had no role in selecting the skeleton crew.  The Department further contends that McFetridge's claims are speculative and lack factual support, as she admitted that even under normal seniority rules, she would not have been selected for the skeleton crew. Additionally, the Department argues that McFetridge's allegations of gender discrimination are not substantiated and do not relate to the claims of conspiracy or collusion.  The Department concludes that McFetridge has failed to meet the burden of proof required to demonstrate any breach of duty or harm caused by the Department's actions.  Thus, it seeks summary relief dismissing it from the case.

McFetridge responds that there is testimony that the Department participated with the Union in making the decision as to how the skeleton crew was

---

[10] Because we have already disposed of the Union's assertion that McFetridge failed to show adequate harm to bring the instant action, we do not separately discuss the Department's similar claim.  Instead, we incorporate our discussion found in Section IV.a, *supra*.

15

to be staffed, particularly Klingler's testimony that the decision was made based upon consensus between herself and local Union leadership.

The extent of the Department's involvement in the staffing decisions is disputed and material to the issue of whether the Department conspired, colluded, or actively participated with the Union. As shown by a fulsome review of the deposition testimonies recounted above, there is conflicting testimony as to who made the decision to staff the skeleton crews and the reasons therefor. Moreover, there is testimony tending to show that the Department actively participated with the Union in the decision to staff the skeleton crew in a manner that did not follow the CBA's furlough and seniority protocols. While Reisinger testified that the skeleton crew staffing plan was implemented by the Department against the Union's wishes, Klingler testified that the decision was made by consensus between herself and local Union leadership, including Reisinger. This ongoing dispute in material facts forecloses the possibility of the Department's request for summary relief at this time.

## VI. CONCLUSION

For the foregoing reasons, the Applications for Summary Relief are denied.

_____
MATTHEW S. WOLF, Judge


Judge Dumas did not participate in the decision in this matter.

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mindy McFetridge,                      :
                 Petitioner      :
                                    :
           v.                          : No. 219 M.D. 2022
                                    :
American Federation of State,          :
County and Municipal Employees,        :
Council 13 and Pennsylvania            :
Department of Transportation,          :
              Respondents :

## O R D E R

AND NOW, this 17th day of March 2026, the Applications for Summary Relief filed by the American Federation of State, County and Municipal Employees, Council 13 and the Pennsylvania Department of Transportation are DENIED.

 

 

_____
MATTHEW S. WOLF, Judge